Rafferty v. Buckman.

RAFFERTY v. BUCKMAN ET AL.

1. **Intoxicating Liquors**: DAMAGES: RECOVERY FOR SALE TO HUSBAND. The fact that the wife has upon other occasions ordered the sale of intoxicating liquors to her husband will not prevent her recovery of damages for a sale upon a particular occasion if she did not assent thereto.

2. ——: SALE: WHEN INFERRED. Plaintiff's husband being in the habit of dealing with defendants, the jury might infer from that fact that the liquor he obtained was a purchase and not a gift, although it was not paid for by him nor charged to him.

3. ——: DAMAGES: ACT OF WIFE. The giving of money by the wife to her husband, for the purpose of procuring liquor to drink, would not justify the inference that she contributed to his intoxication, in the absence of proof that he obtained the liquor by means of such money.

4. ——: ——: EVIDENCE. It was competent for the wife to testify that her husband was in the habit of returning from defendants' store intoxicated, because he would state upon leaving home his intention of going there and upon his return in that condition would bring articles from the store.

5. ——: ——: DEATH OF HUSBAND. Section 1557 of the Code authorizes the recovery of damages for the death of a husband, which has been caused by intoxication, from the party who has sold him the liquors producing the intoxication.

6. ——: ——: MEASURE OF. In case of the death of the husband the jury may estimate the damages with reference to the fact that it is the duty of the husband to provide the wife with present support, as well as maintenance for the future, and that she is entitled to such sum as in a pecuniary point of view would make her whole.

*Appeal from Jackson District Court.*

TUESDAY, JUNE 12.

THE plaintiff is the widow of one John Rafferty. She avers in her petition, in substance, that she has been injured in her means of support by reason of the intoxication of the said John Rafferty, produced by intoxicating liquor sold him by defendants. Other facts are stated in the opinion. Trial by jury. Verdict and judgment for plaintiff for $600. Defendants appeal.

*J. S. Darling* and *A. R. Cotton*, for appellants.

*D. A. Wynkoop* and *L. A. Ellis*, for appellee.

ADAMS, J.—I.   The plaintiff's husband was found dead in the road on the 28th day of February, 1875.   He had become very intemperate in his habits and the evidence tends to show that he died by exposure to the cold in a state of intoxication. The defendants are dealers in groceries and liquors.   On the day of the said John Rafferty's death he left home for the purpose of going to the defendants' store to make some purchases.   On that day he visited the store, obtained a bottle of whiskey and died on the way home.   Much evidence was introduced showing that for a long time previous to that day the deceased had been in the habit of purchasing liquor of defendants.

It is claimed by appellants, however, that the evidence does not show that deceased *became intoxicated* upon any liquors obtained of the defendants.   This objection may be well taken in regard to the liquor obtained of the defendants prior to the day on which he died.   As to the intoxication upon that day, while the evidence does not establish to a certainty that the deceased became intoxicated upon the liquor obtained at the defendants' store, the circumstances were such as to justify such finding by the jury.   The verdict may have been based upon such finding and the evidence as to prior purchases disregarded.

II.   The plaintiff testified that after the death of her husband she said to the defendant, Buckman: "You always said that you would not give my husband liquor;" that he replied: "Yes, Jane, I know that, but he always got it." Afterwards the defendants' counsel examined Buckman upon the point.   They interrogated him as follows:

Q.   "Tell the conversation between you and the plaintiff when you were at her house, about her husband getting liquor at your place."

A.   "It appears to me that she said she told me not to give Rafferty any liquor.   I told her, 'Yes, Jane, but he got it.'"

Q. "Now state to the jury when he got it."

A. "He got it when he fetched orders and he got it through other people who had liquor in their houses when he passed."

Q. "What getting of liquor by the plaintiff's husband did you mean when you said to her that he 'got it,' or 'always got it'?"

To this last question the plaintiff objected, and the objection was sustained and defendants excepted.

It is contended that the jury might have understood that he admitted that the deceased always got liquor at his store, and that he should have been allowed to show what he intended. Undoubtedly an admission may be explained, unless it contains a statement which has been acted upon. It seems to us, however, that the witness did explain in answer to the preceding question what he meant, and that the defendants were not prejudiced by the ruling complained of.

III. The evidence shows that the plaintiff several times ordered the defendants to sell her husband intoxicating liquor, and while it does not appear that she gave any general order to that effect, it is claimed by appellants that the injuries she sustained by the intoxication of her husband by liquor obtained upon her order cannot be distinguished from the injuries sustained by intoxication upon liquor obtained without her order. Strictly speaking, this is true. Yet we have held that where different persons contribute to the besotted condition of a man by selling him liquor which produces intoxication, but do not contribute to the same intoxication, such persons become liable for the injuries produced by each respectively. *Hitchner v. Ehlers et al.*, 44 Iowa, 40.

*I. INTOXICATING liquors: recovery for sale to husband: damages.*

The difficulty in discriminating between the injuries produced by one person and those produced by another, is the same which arises in this case. However great it may be, we think it is not such as to prevent a recovery. In this case the evidence does not show, in respect to some of the intoxications proven, whether they were produced by liquor sold with or without her order. The appellants say, therefore, that she

seeks to charge them with the consequences of her act. It is not to be denied that the duty imposed upon the jury of determining this question is one of no little difficulty; yet the difficulty is by no means a peculiar one. On this point the court instructed the jury that if it is proved, and they should find from the evidence, that the plaintiff contributed to the intoxication of her husband, or connived at or assented thereto, she cannot recover any damages resulting from or caused by intoxication so contributed to or connived at by her. Under that instruction we think that the defendants' rights were sufficiently guarded.

IV. The evidence shows that the liquor obtained by the deceased of defendants, on the day he died, was not paid for by him nor charged to him. The appellants claim that it was given to him, and that they are not liable for any injuries resulting therefrom. It is true the right of action as given by statute, Code, section 1557, is for injuries caused "by selling intoxicating liquors." And while by section 1554 it is provided that courts and juries shall so construe the chapter as to prevent evasion, and so as to cover the act of giving as well as selling by persons not authorized, the appellants claim that no right of action arises from a real gift, but only such as is a gift in form and designed to cover a sale.

2. ——: sale: when inferred.

Without stopping to inquire whether, under the statute, all gifts of liquors may not be regarded as sales, we are of the opinion that there was some evidence tending to show that the furnishing of the liquor in this case was a sale in fact. The evidence shows that the defendants were dealers in liquors and groceries, and that the plaintiff's husband was a customer. From these circumstances the jury had a right to consider whether, if the liquor was furnished without any direct charge therefor, it was not, nevertheless, furnished with a pecuniary motive, and with the understanding that it was to be paid for in Rafferty's general trade. If it was, we think it might be regarded as a sale.

V. The liquor obtained by Rafferty at the defendants' store on the day he died was furnished by a clerk, and there

was evidence tending to show that it was so furnished by him contrary to the defendants' instructions given sometime previous to that day. The defendants, however, were dealers in liquor, and the clerk was employed to sell it. When selling it he was acting in accordance with his general authority. It was proper for the jury to consider this fact in connection with the evidence as to the special prohibition. The question was as to what was the real intent of the defendants. Was the special prohibition given by them for the mere purpose of escaping liability, and with the intention that the general authority should, after all, be pursued? This question was submitted to the jury by an apt instruction, and it is not for us to say that the verdict is wrong.

VI. One witness testifies that the plaintiff admitted that when her husband started for the store she gave him five cents to get a drink with. It is claimed, therefore, that she contributed to the intoxication which produced his death. Before the jury could properly have found such fact, they should have been satisfied that the decedent obtained the liquor by means of such money. Upon this point there is not only no evidence that he did, but there is evidence that he obtained it otherwise.

<span style="margin">3. ——: damages: act of wife.</span>

VII. The defendants moved the court to rule out certain evidence. The court overruled the motion and the same is assigned as error. The plaintiff testified that her husband, when he would come home from defendants' store or mill, would be intoxicated. On cross-examination she was asked:

<span style="margin">4. ——: ——: evidence.</span>

Q. "How do you know that he had been to the defendants' store or mill at the time to which you refer?"

A. "He would go there often to get grocery goods for the house or go to the mill for grists, when he would fetch me things from the store which we wanted, and we almost always traded there; that is how I know he went to their store."

Q. "Have you any other means of knowing that he had been to their mill or store on those occasions when, you say, he thus came home intoxicated?"

A. "When he would be leaving my own house and would

be telling me he was going there—that is, of course, the way I know he went there."

. The testimony of plaintiff, that when her husband came home from defendants' store or mill he would be intoxicated, the defendants claim was wrongly admitted, because she shows that she had no personal knowledge that he had been there. While his going away saying that he was going there might not be evidence that he went there, yet if he brought home store goods on those occasions which he went away with the avowed purpose of purchasing, and if he could not well have purchased them elsewhere, and especially if, as the witness testified, she found the goods charged there, she had some evidence that he had been there at those times.

VIII. The plaintiff offered in evidence the Carlisle Tables. The defendants objected upon the ground: "1st. That the statute on which the action is based does not authorize a recovery consequent upon the death of a husband or by reason of loss of support, or any other loss, damage, or injury resulting from his death.

5. ——: ——:
death of husband.

"2d. That the alleged death and damages based thereon are too remote and not the proximate or natural consequence of the injury complained of." The objection was overruled, and the tables admitted.

. It may well be doubted whether the tables were admissible. A person whose habits were such as those of the deceased did not have the ordinary prospect of life, nor was it so claimed by appellee. The tables were made to show the ordinary prospect and no other. But the defendants, while making this objection in their argument, did not make it in the court below. The first objection there made is that the statute does not authorize a recovery for injuries resulting from the death of the husband. But we think it does if the wife by her husband's death is injured in her means of support. Upon this point plaintiff shows that her husband was about thirty-nine years of age; that he was an industrious man when sober, and during that time provided well for his family. She shows clearly that she had a pecuniary interest in the continuance of his life, as by its termination she lost the support which

Rafferty v. Buckman.

she had theretofore enjoyed. It is argued, however, that the damages are in their nature too uncertain and contingent to form any reliable basis of recovery. The extent of the injury would, to be sure, depend upon the continuance of her own life.

So, again, the death that dissolved her marriage rendered her re-marriageable, and by a re-marriage her means of support might be superior to what she enjoyed with the deceased. However these contingencies should affect the amount of recovery we do not think that they should operate to prevent it. She is at present deprived of the means of support which before her husband's death she derived from his earnings. There is no presumption that she will marry. There is a presumption in favor of the continuance of her life.

But it is said that her husband's death was not the proximate result of the defendants' acts; that it resulted from his own volition. Upon common law principles it might well be doubted whether the damages resulting from his death should not be considered as remote. But those principles are not applicable to such a case. The doctrine contended for by appellants would preclude a recovery for injuries which, in such a case, the wife might sustain to her person. That the husband should become quarrelsome from the effects of liquor and abuse his wife is not more to be expected than that he should freeze to death upon a winter day if he attempted to travel unattended after he had lost the power of locomotion. But upon this subject we are not without adjudications. In *Hocket v. Smelsly*, 63 Ills., the plaintiff's husband, having become intoxicated by liquor sold by the defendant, drove his horse and buggy into a river and was drowned. It was held, under a similar statute, that she was entitled to recover. See, also, *Beder v. Newton*, 54 N. H., 117, and *Jackson v. Brookins*, 12 Supreme Court Rep., N. Y. (5 Hun), 530.

IX. The court gave the jury an instruction in the following words: "It is the duty of the husband to furnish his wife

6. ——: ——: with a present comfortable support and mainten-
measure of. ance in a manner corresponding with their circumstances and condition in life and to provide this support

and maintenance for her in the future during her life." The giving of this instruction was excepted to by defendant and assigned as error.

It is said that it informs the jury that the plaintiff is entitled to recover for expected earnings beyond the period of the expectation of her husband's life, if her expectation of life was greater than his. But such, we think, is not the meaning of the instruction. The earnings of deceased could not be greater than is warranted by his expectation of life, and her recovery could not be greater than such earnings. This is so easily apparent we do not think it possible that the jury could have been misled.

If, indeed, any doubt could arise from the words above quoted, it would, we think, be removed by what follows in the same instruction. The jury was told that for actual damages, if any, she would be entitled to such sum, not exceeding the amount claimed, as would from a pecuniary point of view make her whole. The court then proceeded to enumerate the different facts to be considered in arriving at an estimate, giving, as we think, a correct expression of the law upon the subject. We discover no error in the rulings of the court.

AFFIRMED.