DAN MARTIN, Administrator, Appellant, v. ROBERT MOMYER, Appellee.

No. 45617.

OCTOBER 21, 1941.

Leo A. Hoegh and Johnson & Johnson, for appellant.

Thomas Bray, for appellee.

BLISS, J.—In his original petition plaintiff alleged that the defendant was reckless in the operation of his automobile at the time in question in several particulars, not including intoxication. In his first amendment to the petition, he alleged that the injuries were "approximately caused" as a result of the defendant being under the influence of intoxicating liquor. By a second amendment, he struck the allegation of the first amendment and in substitution alleged that the defendant's "being under the influence of intoxicating liquor was the proximate cause of the damage and injury."

In the substituted answer of defendant, division one thereof contained certain admissions and a general denial. In division two, it was alleged that the injuries to the intestate, DeRuther, were caused by the negligence of Kenneth Jensen, the driver of the other colliding automobile, and not by any negligence, recklessness, or intoxication of defendant. In division three, defendant alleged that a number of hours before the fatal collision he and DeRuther had partaken of some intoxicating liquor at the same times and to the same extent; and that DeRuther, with such knowledge, voluntarily became and remained the guest of defendant in his automobile until the accident, and that if there was any danger involved in being a passenger in defendant's automobile, at the time and place, because of the fact that defendant had drunk some liquor, DeRuther voluntarily acquiesced therein, and assumed the risk of a resulting accident.

It was upon these issues that the case was tried. With little, if anything, to the contrary, it appears from the record that the defendant, a young man in his early twenties, living with his parents, a few miles outside of Knoxville, was employed at a Sinclair service station in the town. He had worked at the station until noon on Christmas Day, 1939, and then went to his home in the country where he remained until about 4:30 o'clock that afternoon. At that time, a young man, whose name was Gee, about 22 years of age, telephoned him and asked if he would not come in with his automobile and take Gee and

DeRuther to a dance at Oskaloosa. Defendant met the other boys at the appointed place and after each had drunk a 10c glass of beer, the three left for the dance with defendant driving. No liquor was drunk on the way to Oskaloosa. Defendant had with· him a pint of whiskey, which he had bought· the day before, but it was not opened until they reached the dance hall. The carburetor of defendant's automobile had not been working well for some days, and because thereof the speed limit of the car was not in excess of 40 miles an hour. This speed was not exceeded in going to Oskaloosa. They reached Oskaloosa about 6:00 o'clock and from that time until about 8:00 o'clock that evening the three young men—DeRuther was about 23 years old—were in a restaurant having dinner. Unaccompanied by any ladies, they then went to the dance hall. Shortly after arriving there, the pint of whiskey was opened, and the three, with an attendant employed at the dance hall, each drank about·two ounces of whiskey by using it to "spike" Coca Cola. Gee then put the whiskey bottle, with what little whiskey was left in it, in his pocket, and defendant saw no more of it. They danced until an intermission for the orchestra about 10:30 o'clock, and then went to the restaurant where they had dined. Two young lady acquaintances of Knoxville were sitting in a booth and they joined the young men, and a quart bottle of beer was ordered and drunk by the five. We have now stated the full extent of the drinking of intoxicating liquor by these young people, as shown by the record. At each time when they drank, DeRuther and defendant sat beside each other in the same booth. The boys returned to the dance hall, and a little later the girls joined them. About midnight, one of the girls suggested going to a tavern or dance hall about seven or eight miles north of Oskaloosa, on Primary Highway 63. DeRuther and Gee, who had paired off with the two girls, asked defendant if he would not take them out to this place. Accompanied by his four companions, defendant drove out to this "night spot," only to find it closed. There was a membership club on the same road back to Oskaloosa, and about four miles north of the city. One of the girls thought she might get the group admitted· to this place, for a dance. It was located not far west of No. 63, but the road to it was hilly and not hard surfaced, and had some

sharp curves and turns. The two boys and the girls secured admittance, but the defendant, having no lady companion, was not permitted to go in. He waited outside about 15 minutes and then asked the doorkeeper to tell his companions to come on, as he wished to be on the way home. He waited a few minutes longer and then was permitted to enter to get his friends. Shortly thereafter, they all came out and got in the car. De-Ruther and his companion in the back seat, and Gee and his lady in the front seat with the defendant, who was driving. He drove back to No. 63 and obeyed the stop sign by halting his car before driving onto the pavement. In all of his driving that night, up to this time, there is no evidence that he had any traffic difficulties, or that there was anything careless or contrary to the law of the road in his operation of the car. He turned south on No. 63 and proceeded up a long hill on the right, or west side, at a speed of not to exceed 30 miles an hour. The defendant and Gee testified that as they reached the top of the hill, they saw the lights of an approaching car in the east lane of the pavement a few hundred yards to the south, and that as it approached to within ten or twelve feet of them it suddenly turned across the black lines into the west lane where the defendant's car was traveling and crashed into the left front part of the car. Gee was the least injured. Defendant was seriously injured and covered with blood from severe cuts and bruises about the head and chest, and remembered nothing more until several hours later in the hospital, to which he and Gee were taken by the deputy sheriff. DeRuther and the two young ladies apparently died at the time of, or shortly after, the collision.

The other car was the Jensen car. It was driven by Jensen. In the front seat with him were a man and his wife. In the rear seat was their baby. There were no other occupants. The injuries received by them are not shown in the record. Jensen was the only one of them who testified. In an affidavit of plaintiff, attached to a motion for continuance, it was stated that if the married lady were present as a witness she would testify that the defendant's car approached the Jensen car, without lights dimmed, on the wrong side of the road, and was at least 5 feet east of the center of the road when the cars col-

lided. Jensen testified that he saw defendant's car approaching from the north on "my side of the road;" that he (Jensen) was driving at 40 or 45 miles an hour on the right side of the road; and that all he knew was that the cars came together. He was not asked, nor did he testify, as to the speed of the defendant's car. The only testimony as to the speed of defendant's car is that of the defendant and Gee that it did not exceed 30 miles an hour. We have set out all of the evidence as to the operation of both cars, at and just before the collision. Jensen testified that he and his party spent considerable time at a drinking club in Ottumwa before leaving for Hedrick at midnight preparatory to their trip north on No. 63.

Other witnesses who came upon the scene shortly after the collision testified as to the position of the cars. After colliding, the rear end of each car swung outward and forward about 90 degrees and the cars came to rest facing each other at about right angles to their paths of travel before the collision. The front of the Jensen car was near the east edge of the paving on the shoulder. The front of the defendant's car was a little east of the black lines, leaving sufficient space between them for traffic. The entire front, radiator and crankcase, and front wheels of the Jensen car were smashed and broken. The left front corner and left front wheel and radiator of the defendant's car were crushed and driven back. The breaking of the left front wheel of defendant's car allowed the axle to drop to the pavement. The spring on that side was fastened to the axle by clamps bolted to the axle. These bolts extended below the axle. Some distance west of the center line of the pavement, in the west slab, were three freshly made holes. Pictures were taken of them. Evidence showed that the bolts on the clamp fitted exactly into these holes.

Without reviewing the evidence on the issue of intoxication, we have no hesitancy in saying that it fully supports the finding of the jury that defendant was not under the influence of intoxicating liquor. No witness who saw him before the collision testified that he gave any appearance of intoxication. Only the sheriff and his deputy, who did not see the defendant until he was delirious and semi-conscious from his injuries, thought that he was under the influence of intoxicating liquor.

The court, on its own motion, submitted three special interrogatories to the jury, to be answered by "Yes" or "No." No. 1 was:

"Do you find that the defendant, Robert Momyer, was reckless in the operation of his automobile at the time and place of the accident under investigation? Answer No. * * *

"No. 2. Do you find that the defendant, * *· * was under the influence of intoxicating liquors at the time and place of the accident under investigation? Answer No. * * *

"No. 3. If you should find that the defendant, * * *, was under the influence of intoxicating liquors at the time and place of the accident under investigation, do you find that the deceased, Melvin DeRuther, assumed the risk of riding with him, as such assumption of risk is defined in these instructions? Answer Yes."

The record fully justifies the answers. They confirm the general verdict for defendant. It was necessary that plaintiff establish one of the two propositions involved in the first two interrogatories. The jury answered both adversely to his contention. The third involved an affirmative defense pleaded by defendant. The answer established the defense.

▅▅▅ Appellant complains that the words "accident under investigation" in each interrogatory improperly directed the attention of the jury to the criminal investigation against defendant by the Grand Jury. We see no foundation for the contention. The words clearly direct the jury to the investigation being conducted in the civil trial then being had. Calling the jury's attention to a criminal prosecution against the defendant growing out of the collision could hardly prejudice plaintiff's case. Whatever the crime was for which he was indicted and tried, we were told in oral argument that a jury acquitted him of its commission.

Appellant assigns error in the giving of several instructions. No requested instructions were offered by either side. We have carefully considered each assigned error. It is our conclusion that none of the instructions complained of are erroneous. In view of the evidence, and of the entire record,

and of the answers to the special interrogatories, none of the errors assigned could have been prejudicial to appellant.

I. Appellant complains that because assumption of risk was pleaded only to the issue of intoxication, and not to the issue of reckless operation of the car, Instruction 12 was erroneous, since it told the jury that plaintiff could not recover if they found this defense established. Appellee maintains that the defense covered both issues. We are constrained to disagree with the appellee in this, but we believe there is no error. Appellee moved for a directed verdict. In overruling the motion, the court said: "I am going to submit this case to the jury. I realize it is a very close question as to whether or not there is evidence of recklessness in this case."

The only evidence of reckless operation is the testimony of Jensen that defendant drove his car over onto the east lane of the pavement and collided with his car, and the unsworn statement of the lady in his car to the same effect. Accepting this evidence as true, and construing the entire record most favorably to appellant, we cannot rightfully say that the issue of reckless operation of defendant's automobile was established. That issue should not have been submitted to the jury. There was, therefore, no error in Instruction 12.

II. Appellant complains because in Instruction 5 the court said: "Neither can recklessness be determined by the results of an accident; that is, the fact that the results of an accident were serious is not of itself any evidence of recklessness." The appellant urges that the language forbids the jury from considering the physical facts involved as a result of the accident. The word "results" covers a broad field and perhaps leaves the meaning intended by the court in the instruction open to different interpretations. The court did not mean that the extent or character of the physical damage to the cars, or the surroundings, or the physical facts evident from the collision were never any evidence of recklessness, particularly when considered with other matters shown. In another instruction, the court told the jury that these matters might be considered. It is our thought that the court meant only to caution the jury that the serious consequences of the collision in the loss of three lives and serious injuries to others should not have weight with

them in determining the issue of recklessness. It is our judgment that this is a fair construction to put upon the instruction, and that the jury was not misled to the prejudice of the plaintiff.

III. It is also insisted that the court erred in Instruction 6 in telling the jury that the burden was upon plaintiff to establish that he was administrator of the estate of the decedent. Plaintiff made proper allegation that he was the administrator. The defendant neither admitted, nor denied the allegation. Under sections 11207 and 11208, Code of 1939, a denial of the representative capacity alleged to be effective must specifically set out the grounds supporting the denial. See Jordison v. Jordison Bros., 215 Iowa 938, 247 N. W. 491; Richards v. Hellen & Son, 153 Iowa 66, 73, 133 N. W. 393; University of Chicago v. Emmert, 108 Iowa 500, 503, 79 N. W. 285; Schalk v. Smith, 224 Iowa 904, 910, 277 N. W. 303. Since there was no such denial, the plaintiff could have rested the issue on his pleading, but he established the allegation by testimony of plaintiff and the deputy clerk of the court. Under the circumstances, the court should not have instructed as it did, but under the whole record and in view of the answers to the interrogatories, any error was not prejudicial.

IV. Appellant urges error in Instruction 8 because in the definition of recklessness, the court said that "by the term reckless operation of a motor vehicle, * * * is meant the operation of the same in such manner as there can be implied therefrom that the defendant *consciously* operated his automobile with a total indifference as to whether the deceased or other persons might be injured", etc. (Italics supplied.) The claim is made that in using the word "consciously" the jury would be led to believe that the defendant's conduct must have been wanton or wilful to entitle plaintiff to recover. We think the court used the word in the sense of "knowingly," and that the jury so understood it.

V. Appellant complains that in Instruction 9 the court erred in not defining what is meant by having "a car under control." While this court has on several occasions defined the phrase, we think there was no occasion for it in this case, under the facts as shown. More often than otherwise, it

refers to speed. Speed was not an element in this case. We have said that a car is under control if it is moving at such a rate of speed and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. Carruthers v. Campbell, 195 Iowa 390, 392, 192 N. W. 138, 28 A. L. R. 949; Carlson v. Meusberger, 200 Iowa 65, 76, 204 N. W. 432; Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862; Johnston v. Johnson, 225 Iowa 77, 87, 279 N. W. 139, 118 A. L. R. 233. As said in the last cited case, the word "control" would naturally be understood in its practical and ordinary sense and could not well have been misunderstood by the jury. In Altfilisch v. Wessel, supra, the term "under control" was not defined by the court, but in the absence of a request to define it, the court held that there was no error in not doing so. Johnston v. Johnson, supra.

VI. In Instruction 10 the court said that a person was under the influence of intoxicating liquors when by reason of the use thereof his faculties have been *overcome* or affected, and he is unable to exercise proper control over his actions, or his judgment is impaired. Appellant complains of the use of the word "overcome" as placing too heavy a burden upon the plaintiff, since he was not required to show that defendant was overcome with intoxicating liquor. The objection is without merit, as such is not the clear meaning of the instruction.

VII. Error is assigned because of Instruction 11, in which the court instructed upon the pleaded defense that the proximate cause of the collision was the negligence of Jensen. Appellant insists that this singles out and gives undue emphasis to this phase of the case. We find no error in this. It was proper that the court instruct on this defense.

VIII. In Instruction 13 the court instructed upon the various elements which the jury might consider in fixing the amount of damages. Appellant complains because certain elements were mentioned of which there was no evidence. If there was error, and we do not find that there was, it was without prejudice, since the jury found that plaintiff was not entitled to any damages.

We have passed upon every error assigned and are firmly

convinced that the judgment should be affirmed. It is so ordered.—Affirmed.

MILLER, C. J., and STIGER, SAGER, MITCHELL, OLIVER, GARFIELD, and HALE, JJ., concur.