**Jerrie BERGE, Appellant,**

**v.**

**Neil S. HARRIS, Gerald F. Knapp, and University Athletic Club of Iowa City, Iowa, Appellees.**

**No. 53562.**

Supreme Court of Iowa.

Sept. 16, 1969.

Westfall, Laird, Burington, Bovard & Heiny, Mason City, for appellant.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellees Neil S. Harris and Gerald F. Knapp.

Shulman, Phelan, Tucker, Boyle & Mullen, Iowa City, for appellee University Athletic Club.

STUART, Justice.

Plaintiff sustained personal injuries when the car in which she was riding as a guest struck the rear end of a parked vehicle. She brought this action against Harris, driver of the car in which she was riding, and his stepfather Knapp, its owner, alleging the driver's intoxication and recklessness. Action was brought against the University Athletic Club of Iowa City under the Dramshop Act, section 129.2, Code of Iowa. At the close of plaintiff's case, the trial court directed a verdict in favor of all defendants on the grounds that there was not sufficient evidence to submit the question of recklessness to the jury and the evidence established plaintiff had assumed the risk of the driver's intoxication as a matter of law.

Defendant, Harris and his friend Stuart Jacobson, were students at Drake. Both had formerly attended the University of Iowa. By prearrangement they came to

Iowa City on February 18, 1966. Jacobson wanted to attend a fraternity party. Plaintiff had a date with Jacobson. Harris had a date with Patricia Grossman.

The boys arrived in Iowa City about 3:30 p. m. and drank some beer in the afternoon. They picked the girls up at Burge Hall about 8:30. They went first to the home of a friend named Carley. From there they went to the University Athletic Club where the fraternity party was being held. The accident occurred as they were returning to Burge Hall after the party.

As the primary questions involve the sufficiency of the evidence to generate jury questions, it will be stated in necessary detail under the appropriate assignment of error.

I. No claim is made there was not sufficient evidence of Harris' intoxication to generate a jury issue. The question is whether there was also evidence plaintiff was so advised of his condition that she, as a matter of law, assumed the risk of personal injury when she rode in the automobile he was driving.

■ The doctrine of assumption of risk is based on the voluntary acceptance of the danger by plaintiff with full knowledge thereof and involves a more or less deliberate choice. "It cannot logically be held that one has deliberately chosen a dangerous course of which he is ignorant merely because he should have known of it." Bohnsack v. Driftmier, 243 Iowa 383, 393, 52 N.W.2d 79, 84.

■ In order to affirm the trial court's ruling which sustained the motion to direct a verdict on this ground, the evidence viewed in the light most favorable to plaintiff must, as a matter of law, compel the finding plaintiff knew Harris had been drinking to the extent it was dangerous to ride with him when they left the University Athletic Club. We will examine the evidence tending to show plaintiff's awareness of Harris' condition, keeping in mind

it is only in the exceptional case where a verdict can be directed in favor of the party having the burden of proof. Lamaak v. Brown, 259 Iowa 1324, 1327, 147 N.W. 2d 915, 916; Sayre v. Andrews, 259 Iowa 930, 943, 146 N.W.2d 336, 344; Reeves v. Beekman, 256 Iowa 263, 270, 127 N.W.2d 95, 99.

Patricia Grossman told plaintiff the boys had been drinking beer in the afternoon. Plaintiff saw Harris with a beer in his hand at Carley's but didn't know how much he drank there. Plaintiff split one beer with her date at Carley's. There was nothing unusual about Harris' driving, appearance or actions before they arrived at the Athletic Club.

At the Athletic Club plaintiff and her date visited friends, danced and watched a skit performed by fraternity pledges. She drank one glass of beer. Jacobson did not drink much. Harris and his date spent most of the evening in the barroom which was separate from the dance floor and tables.

At no time while they were at the party did plaintiff visit with Harris. She was close to him on two occasions, but paid no particular attention to him. The four of them had their picture taken together right after they got there. At intermission, he introduced her and Jacobson to a member of the band. There was nothing at that time to indicate to plaintiff Harris had had too much to drink. She only saw Harris and his date dance one three minute dance. Except when he was dancing, he had a drink of scotch and water in his hand. She had no way of knowing how many drinks he had. She did not see him stagger or hear him slur his words at any time during the evening.

After the dance was over plaintiff and her date visited with friends, got their coats and as they passed the bar on the way to the car, Harris was there with a drink in his hand. After waiting in the car for five or ten minutes, plaintiff sent Jacobson back in to get Harris and his

date. She stayed in the car and did not observe Harris as he walked to the car.

When Harris came to the car, the plaintiff, in the presence of Harris, Jacobson and Patsy Grossman, asked Jacobson if he would drive. Jacobson asked Harris if he could drive and Harris said that he was okay and it was his car and he would drive. Plaintiff then asked if Patsy or she could drive. They laughed and teased her about this suggestion.

She wanted someone else to drive because she was apprehensive about Harris driving. She was apprehensive because she knew he had been in the bar most of the evening and because Jacobson had to go back in and get him when they were leaving and she didn't know how much he had had to drink. She would just rather have had someone else drive. She questioned the amount Harris had had to drink.

She also testified: "I was saying at first I was doubtful whether he could drive and I asked Stuart and Stuart said he was okay, and so I relied on Stuart's judgment because Stuart is a friend of mine and he was also my date." They left the Athletic Club with Harris driving.

None of the witnesses who testified Harris was intoxicated stated he staggered or slurred his words. Two witnesses based their opinion on his "unseemly" embrace with a girl at the bar. They did not see him move or hear him talk.

One student testified he was "definitely high" and talked louder than usual. Pasty testified there was nothing about his conduct that would alert a bartender that he was intoxicated. She did not believe he was intoxicated, but was "high". She defined intoxication as being unable to control the way you walked and your ability to pick up things—when you have lost motor control.

We cannot say this is one of the exceptional cases in which defendants have carried the burden of proving assumption of risk as a matter of law. It is true plaintiff's testimony is inconsistent and the jury might well have believed she knew of Harris' condition and appreciated the danger of riding with him. The jury might also have believed she did not know he was intoxicated and was at most apprehensive because she knew he had been doing some drinking. No one testified he displayed any of the usual symptoms of intoxication, except that he was louder and gayer than usual. There was no showing plaintiff saw him acting this way.

Evidence that defendant did not appear to be intoxicated was important in holding a jury question on assumption of risk was engendered in Lamaak v. Brown, 259 Iowa 1324, 1327, 147 N.W.2d 915, 916; Bohnsack v. Driftmier, 243 Iowa 383, 394, 52 N.W. 2d 79, 85; Booth v. General Mills, Inc., 243 Iowa 206, 209, 49 N.W.2d 561, 562; Agans v. General Mills, Inc., 242 Iowa 978, 982, 48 N.W.2d 242, 244, and Augusta v. Jensen, 241 Iowa 697, 700, 42 N.W.2d 383, 385. In all five of these cases plaintiff had a greater opportunity to know how much defendant drank than plaintiff here. In the cited cases plaintiff was with defendant when he was drinking. Here the contacts during the evening were limited.

The record also shows plaintiff knew Harris only slightly. She had not been around him to know how he acted when he was drinking. Lack of familiarity was another factor affecting plaintiff's knowledge of Harris' condition. In Bohnsack v. Driftmier, supra, we considered the fact that the guest and the driver were comparative strangers to be significant.

In three cases we have held assumption of risk established as a matter of law. Christopherson v. Christensen, 258 Iowa 648, 656, 140 N.W.2d 146, 151; Reeves v. Beekman, 256 Iowa 263, 270, 127 N.W.2d 95, 99; Garrity v. Mangan, 232 Iowa 1188, 1193–1194, 6 N.W.2d 292, 295. In all of these cases the driver and guest associated together for several hours while both were drinking. The evidence here is not comparable. We believe a proper distinction

can and should be made between situations in which the guest is an active participant in the drinking activities and must have known how much the host drank and the facts disclosed in the instant case.

■ We must recognize that a guest is not likely to refuse to ride with a host because he is merely apprehensive that the host may have too much to drink. Such apprehension does not show full knowledge of the danger so as to constitute assumption of risk as a matter of law. The evidence here does not show plaintiff was so closely associated with Harris' drinking activities that she must have known how much he drank. The evidence would support a finding Harris did not present an obviously intoxicated appearance. The question of assumption of risk was for the jury.

II. Plaintiff contends assumption of risk is not available to the Athletic Club as an affirmative defense under section 129.2, which provides: "Every * * * other person who shall be injured in person * * * in consequence of the intoxication, * * * of any person, shall have a right of action * * * against any person who shall, by selling * * * any intoxicating liquors, cause the intoxication of such person, * * *." There is a surprising dearth of authority on this question.

The authorities cited by plaintiff in support of her contention hold contributory negligence is no defense to an action under the dramshop act as such action is based on the breach of a statutory duty and does not require a showing of negligence. Cookinham v. Sullivan (1962), 23 Conn.Sup. 193, 179 A.2d 840, 841; Quatrano v. Marrocco (1965), 61 Ill.App.2d 1, 208 N.E.2d 632, 638; Osinger v. Christian (1963), 43 Ill. App.2d 480, 193 N.E.2d 872, 875; Taylor v. Hughes (1958), 17 Ill.App.2d 138, 149 N.E.2d 393, 396; James v. Wicker (1941), 309 Ill.App. 397, 33 N.E.2d 169, 171; Genesee Merchants Bank & Trust Co. v. Bourrie (1965), 375 Mich. 383, 134 N.W.2d 713, 716.

The same line of cases recognizes the equally well established rule of complicity under which a party who participates in the drinking activities during which the injuring party becomes intoxicated cannot recover under the dramshop act for injuries sustained as a result of such intoxication. Cookinham v. Sullivan, supra, 179 A.2d at 842; Quatrano v. Marrocco, supra, 208 N.E.2d at 639; Osinger v. Christian, supra, 193 N.E.2d at 874–875; Taylor v. Hughes, supra, 149 N.E.2d at 396; James v. Wicker, supra, 33 N.E.2d at 171–172; Kangas v. Suchorski (1964), 372 Mich. 396, 126 N.W.2d 803, 804–805.

■ The two reasons for the rule expressed in the cases are that one cannot profit from his own wrong and a person who participates in the drinking activities is not an innocent person entitled to protection under the dramshop act.

Early Iowa cases recognized this rule in substance. In Engleken v. Hilger, 43 Iowa 563, 564, we held plaintiff was not "permitted to recover from another damages for wrongs and injuries inflicted on herself by her intoxicated husband when she by her own act caused the intoxication". See: Ward v. Thompson, 48 Iowa 588, 592; Rafferty v. Buckman, 46 Iowa 195, 198; Kearney v. Fitzgerald, 43 Iowa 580, 585.

Neither line of authorities apply to the factual situation here. Under this evidence the jury could find plaintiff had no part in causing the driver to become intoxicated but did voluntarily and willingly assent to ride with him knowing he was intoxicated and appreciated the perils to which she was thereby subjecting herself. Plaintiff claims such finding would not bar her recovery as assumption of risk is no defense to an action brought under the dramshop act.

No cases deciding this point have been cited and we have found none. The question was raised, but not decided, in Cookinham v. Sullivan, supra, 179 A.2d at 841. However, it appears to us that assumption of risk should be available to a defendant under the dramshop act.

We have not limited assumption of risk to master-servant cases or negligence generally. The cases cited in division I show we have considered it a proper defense under the Iowa Guest Statute, section 321.494, when contributory negligence was no defense. Bohnsack v. Driftmier, 243 Iowa 383, 392, 52 N.W.2d 79, 84. In Bohnsack we referred to assumption of risk as "an application of the maxim, volenti non fit injuria—'That to which a person assents is not esteemed in law an injury.' (Citations)." 243 Iowa at 392, 52 N.W.2d at 84.

Corpus Juris Secundum presents assumption of risk under the broad subject of torts, which includes the violation of a statutory duty, 86 C.J.S. Torts § 6, 926 in the following manner:

"The doctrine may be, and has been, stated in terms of assent in that the person injured by submitting voluntarily to known dangers with a realization of the risk assents to a qualification of his rights to an extent coterminous with the appreciated peril, and, as a result of such assent, cannot, in the absence of statute, base a tort on harms produced by the assumed danger. * * *" 86 C.J.S. Torts § 12, 931.

Section 496C of the Restatement of the Law, Torts, Second, states:

"(1) Except as stated in Subsection (2), a plaintiff who fully understands a risk of harm to himself * * * caused by defendant's conduct * * * and who nevertheless voluntarily chooses to enter or remain * * * within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk.

"(2) The rule stated in Subsection (1) does not apply in any situation in which an express agreement to accept the risk would be invalid as contrary to public policy."

Comment f under § 496C sets forth the type of situation confronting us here. "In the third type of situation, the defendant has already violated his duty to plaintiff, by creating a dangerous condition or situation, which continues after defendant's conduct has terminated. If the plaintiff is injured before he discovers the danger, the defendant will be liable to him. When, however, the plaintiff discovers the danger, and voluntarily proceeds in the face of it, he is barred from recovery by his assumption of the risk."

Under the evidence here the jury could find facts which would fit within these concepts of assumption of risk and such defense should be available to the Athletic Club unless there is something in the dramshop act which prevents its use or indicates its use would be inconsistent with the purpose of the enactment.

We find nothing in the statute suggesting that an injured party should be allowed to recover regardless of his conduct. The doctrine of complicity is a recognition of the fact that the right to recover is limited to innocent persons. One who knowingly rides with a drunken driver can hardly be included in that category. We find no statutory bar to the application of assumption of risk.

We do not believe the defense of assumption of risk will interfere with the purpose of the statute. "The dramshop act is designed to fulfill a need for discipline in the traffic of liquor and to provide a remedy for evils and dangers which flow from such traffic." Osinger v. Christian, supra, 193 N.E.2d at 875. The evil and danger we are concerned with here is that a person in an intoxicated condition might unintentionally, but as a result of his intoxication, injure some other party. We do not believe it contributes to the fulfillment of this purpose if the injured party is given no responsibility for his own welfare. Theoretically, as least, a person might be more willing to submit himself to the danger of riding with an intoxicated person if he could retain a cause of action under the dramshop act. The situation is analogous to the defense of complicity. In Osinger v. Christian, supra, the court said: "Allowing one who participates in causing the

intoxication to recover would enhance instead of suppress the mischief * * *" the statute seeks to restrict.

On the question of public policy, Restatement of the Law, Torts 2d, states in comment j under § 496C: "The same considerations of public policy, for the protection of particular classes of persons against unfair or unreasonable advantage which may be taken of them, which have led the courts in some situations to invalidate express agreements for assumption of risk, [i. e. employer-employee relationship] may lead to a decision that as between particular plaintiffs and defendants, or in particular situations, implied assumption of risk is not to be recognized as a defense."

Such is not the situation here. A defendant under the dramshop act has no advantage over one who knowingly and willingly rides with a drunken driver. The defense need not be barred for his protection. He is as able to protect himself from the danger as the ordinary plaintiff subjected to the possible defense of assumption of risk.

■ The fact that the dramshop act imposes strict liability does not prevent defendant from raising assumption of risk as a defense. Harper and James, The Law of Torts, Vol. 2, page 804, § 14.5; Restatement of Torts, § 523.

Assumption of risk "is a distinctive kind of contributory negligence, in which the plaintiff knows the risk and voluntarily accepts it; and it has been held to differ from contributory negligence which merely fails to discover the danger in several minor respects. Thus assumption of risk is governed by the subjective standard of the plaintiff himself, whereas contributory negligence is measured by the objective standard of a reasonable man. Assumption of risk, whether or not it is called contributory negligence, will bar recovery in an action founded on strict liability, where the plaintiff's ordinary negligence will not." Prosser on Torts, page 454, § 67.

In any event we are unable to see any logical distinction between the liability of an intoxicated driver to a guest under the guest statute, section 321.494 Code of Iowa, and the liability of the party who served the driver liquor to the same guest under the dramshop act, section 129.2 Code of Iowa. If the defense is available to the driver, as we have held, it should also be available to a defendant under the dramshop act.

■ A defendant under the dramshop act is entitled to urge the defense of assumption of risk, which we hold in division I is for the jury in this case.

III. The trial court held there was not sufficient evidence of recklessness to engender a jury question on that issue.

"Recklessness is '* * * more than want of ordinary care. It must be shown that the operator of the vehicle used no care, coupled with a disregard for consequences, and to constitute recklessness, the acts must be such as to manifest a heedless disregard for or indifference to the rights of others. It requires actual knowledge of an existing danger or the presence of danger so obvious that the operator should have knowledge of it and proceeded without heed of or concern for the consequences, and that the conduct of the operator of the vehicle is such that the consequences of his actions are such that the injury is a probability rather than a possibility'. Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d 575, 577." Allbee v. Berry, 254 Iowa 712, 714, 119 N.W.2d 230, 231.

■ We require evidence of a persistent course of conduct to show no care with disregard of the consequences. Shoop v. Hubbard, 259 Iowa 1362, 1365, 147 N.W.2d 51, 53.

The evidence pertinent to this issue, viewed in the light most favorable to plaintiff, follows.

When Harris drove out of the parking lot and turned toward Iowa City he made

**628**

his tires squeal and reached the speed of 70 miles per hour. His date testified: "As we left the parking lot, Nick was driving perfectly normal and we turned left out of the parking lot and I noticed he was driving very fast and 1 looked at the speedometer and I noticed it was around 70 miles an hour and I said, 'Nick, why don't you slow down?' And he didn't respond, but he did slow down somewhat and his speed would fluctuate up and down all the way to the stop sign. When I first told him to slow down, he went down to I would say 40 or 45 miles an hour and then he would go back up again. These speeds that I have told you about are from looking at the speedometer in the beginning when he was going very fast and then after he slowed down and then you know, I didn't look at it again. I was concerned only about the speed of his driving. He was driving straight and fine." No one in the car made any further complaint about the speed at which he was driving.

There was one stop sign between the Athletic Club and the place of the accident. Neither plaintiff not Patsy recalled whether he stopped at the stop sign, but plaintiff didn't think he did. She testified on direct examination: "The distance from the Athletic Club to this stop sign is about a half a mile. I do not recall the Harris car stopping at that stop sign. I believe someone in the car said 'or the stop sign was painted or something like that'. * * * I gathered that it meant probably that they didn't have to stop. I observed nothing that indicated that the stop sign was painted over."

On cross-examination she testified:

"Q. Did you still have those doubts after you were in the car? A. When he started out fast I had the doubt, but then when Patsy told him to slow down and he did slow down I wasn't worried.

"I was worried when we were going out of the parking lot and until Patsy told him to slow down and he slowed down. After he slowed down I wasn't worried until the stop sign. I wasn't scared to death during that time I don't believe. I think he went through the stop sign. To the best of my knowledge, he did. To the best of my recollection I remember someone saying about the painted over sign and I don't recall him stopping. That's why I formed my opinion. I knew there was a stop sign there. I don't recall him stopping at the stop sign. I don't know whether I could say that I specifically remember him driving through. I remember them saying that and I don't recall him stopping.

"I was present and I have previously heard Patsy say he did stop at the stop sign and I have heard Mr. Harris say that he stopped at the stop sign as did Mr. Jacobson.

"Q. So, out of the four people in the car the other three all say he stopped and as I understand your testimony it's not that he didn't stop, but simply that you don't recall him having stopped, is that correct? A. I don't recall him having stopped and I also was the only one that wasn't drinking.

"Q. You were the only one that wasn't drinking? A. Well, I had one drink.

"Prior to that time I did drink on occasion.

"Patsy was drinking and Jacobson was drinking. I don't know how much he had to drink. He didn't have very much to drink. I was with him from 8:30 to 12:30 but I don't know exactly how much he had to drink. We were socializing with different people part of the time. I know basically how much he had to drink. I don't believe he had very much to drink."

As they were proceeding toward the point of the accident Harris was driving about 35 miles per hour in a 25 mile per hour speed zone. The car was being driven on the right side of the road and was not swerving from side to side.

Plaintiff saw the parked cars when they were a block and a half to two blocks away. When they were about 75 feet from the

parked cars she yelled: "Watch out for the parked car". Harris did not apply the brakes or attempt to change the course of the vehicle before they hit the parked vehicle.

She explained waiting until they were so close before calling his attention to the parked cars as follows:

"Q. And you sat there and not constantly, but saw these cars parked on the right two blocks before, let Mr. Harris drive along at 35 miles an hour and 75 feet away suddenly it looked to you like he was going to hit them and you yelled 'Watch out for the car'? A. I told you previously that I didn't know whether he was trying to tease me or not and I thought that he would probably—I have had people do that to me before, even lately once.

"Q. He was trying to tease you? A. I didn't know what he was doing. I didn't know whether he was going to pull over and park or whether he was going to pull over and go back outside. I didn't know what he was doing. I didn't ask him what he was doing."

■ The court is of the opinion that the evidence, including evidence of Harris' intoxication, is sufficient to raise a jury question as to his recklessness.[1] Kauzlarich v. Fitzwater, 255 Iowa 1067, 1073, 125 N.W. 2d 205, 208; Hahn v. Strubel, 243 Iowa 438, 447, 52 N.W.2d 28, 33.

■ IV. Defendant Athletic Club claims plaintiff was guilty of complicity. The doctrine was discussed in division II and is recognized in Iowa. The evidence here does not show she in any manner participated in the activities by which Harris became intoxicated. If this evidence remains uncontested when defendants present their case, this issue should not be submitted to the jury. We, of course, cannot and do not attempt to anticipate evidence defendants may bring forth on this issue on retrial.

As we hold the evidence raised a jury question as to Harris' recklessness and intoxication and plaintiff's assumption of the risk of his intoxication, the case is reversed and remanded for new trial on all issues.

Reversed and remanded.

GARFIELD, C. J., and SNELL and MOORE, JJ., concur in the opinion.

RAWLINGS, BECKER and LeGRAND, JJ., dissent from Division II.

LARSON and MASON, JJ., take no part.

RAWLINGS, Justice (dissenting in part).

Being unable to agree with the reasoning or conclusion reached in Division II of the majority opinion regarding availability of the assumption of risk doctrine to defendant-Athletic Club, I therefore concur in part, dissent in part.

I. It is to me evident the majority here again unjustifiably extends assumption of risk when other courts are more realistically abandoning that concept. I am satisfied it should in any event be strictly limited to those cases in which plaintiff and defendant stand in a consensual relationship to each other, i. e., host-guest, master-servant, principal-agent cases, or where it exists by virtue of some legally acceptable express agreement.

See in support of the foregoing Owens v. Union Pac. R. Co., 319 U.S. 715, 720, 63 S.Ct. 1271, 1274, 87 L.Ed. 1683; dissent in Wright v. Peterson, 259 Iowa 1239, 1249,

---

1. The writer and Snell, J., seriously question the sufficiency of the evidence to engender a jury question on recklessness under our cases, but do not dissent formally. See: Schmitt v. Cutkomp, 248 Iowa 575, 81 N.W.2d 662; Bohnsack v. Drift-mier, 243 Iowa 383, 52 N.W.2d 79; Long v. Pearce, 233 Iowa 1025, 10 N.W.2d 50; Harvey v. Clark, 232 Iowa 729, 6 N.W. 2d 144, 143 A.L.R. 1141; Martin v. Momyer, 230 Iowa 1158, 300 N.W. 310.

146 N.W.2d 617; and Prosser, Law of Torts, Third Ed., Single Volume, section 67, page 450, 455–461.

II. Furthermore I cannot agree with the majority's finding to the effect there is nothing inconsistent with the purposes of our dram shop or civil damage acts, and attendant application of assumption of risk as a defense.

At the outset, defendant-Athletic Club's liability, if any, is the result of statutory enactment, there being no counterpart in any common law doctrine. It was not a tort at common law either to sell or give alcoholic liquor to another. It thus follows, dram shop acts serve to create an entirely new statutory cause of action previously unknown to Anglo-American jurisprudence.

Unlike general law governing tort liability, fault or wrongdoing on the part of the dram shop offender is not essential to liability. In other words, negligence is not a prerequisite to recovery, and liability is imposed upon persons other than the one directly causing an injury. Resultantly an injured third party can recover from the statute violating first party who has provided a second party with intoxicating beverages to the point of intoxication, even though the injured third party has had no direct dealings or association with the first party dispenser.

Actually, as evidenced by the provisions of both our dram shop acts, their purpose is to make those who excessively supply intoxicants to another, liable for any resulting damage.

Moreover, all dram shop acts in general, as demonstrated by Code section 123.1 are enacted as: " * * * an exercise of the police power of the state, for the protection of the welfare, health, peace, morals and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated * * *." See also Crane v. Campbell, 245 U.S. 304, 307, 38 S.Ct. 98, 99, 62 L.Ed. 304; 48 C.J.S.. Intoxicating Liquors § 33, page 164; and 30 Am.Jur., Intoxicating Liquors, section 21, page 263.

In summary then, we are concerned with legislation designed to promote public health, welfare, peace, morals and safety by creating a statutory right of action unknown to the common law. And an injured third party, in an action brought under such legislative enactments is permitted recovery without regard to the supplier's fault or negligence.

With regard to the foregoing see Wendelin v. Russell, 259 Iowa 1152, 147 N.W.2d 188; Hitson v. Dwyer, 61 Cal.App.2d 803, 143 P.2d 952; Henry Grady Hotel Co. v. Sturgis, 70 Ga.App. 379, 28 S.E.2d 329; Howlett v. Doglio, 402 Ill. 311, 83 N.E.2d 708, 6 A.L.R.2d 790; Dillon v. Nathan, 10 Ill.App.2d 289, 135 N.E.2d 136; Sworski v. Colman, 204 Minn. 474, 283 N.W. 778; Iszler v. Jorda, (N.D.), 80 N.W.2d 665; Christoff v. Gradsky, Ohio Com.Pl., 140 N.E.2d 586; 13 Drake L.Rev. 172; 1958 Univ. of Ill.L.Forum 175; 1967 Univ. of Ill.L.Forum 116; 38 N.D.L.Rev. 103; 4 Vill.L.Rev. 575; 26 A.L.R.3d 1112; and 48 C.J.S. Intoxicating Liquors §§ 430–436, pages 716–720.

On the other hand the assumption of risk doctrine is a hybrid judicial invention. As Professor James stated in 61 Yale Law Journal 141: "(1) In its primary sense the plaintiff's assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. Volenti non fit injuria. (2) A plaintiff may also be said to assume a risk created by defendant's breach of duty towards him, when he deliberately chooses to encounter that risk. In such a case, except possibly in master and servant cases, plaintiff will be barred from recovery only if he was unreasonable in encountering the risk

under the circumstances. This is a form of contributory negligence."

When considering the availability of assumption of risk as a defense in a dram shop action, it must be remembered we are concerned with an injured third party who has ordinarily had no association or dealings with defendant supplier.

With that in mind this statement in Harper and James, The Law of Torts, is both pertinent and persuasive. These authors at section 21.1, page 1165 state: "Not reasonableness of the risk but the voluntary character of the association is the gist of the defense. True assumption of risk reflects the individualism of the common law in relationships wherein it was felt that the duty of self-protection against many hazards rested primarily on each participant. It is a negation of duty by one to look out affirmatively for the other's safety.

*"It is clear then that the concept of assumption of risk in the primary sense is not to be considered in a situation where defendant has breached a duty towards plaintiff—where the latter has 'a statutory right to protection, * * *."* (Emphasis supplied.)

In addition these same authors state at section 21.3, page 1174, that: *"The key is to be found in the character of the relationship between the parties and their respective duties in the light of it. The plaintiff takes a risk voluntarily (within the meaning of the present rule) where the defendant has a right to face him with the dilemma of 'take it or leave it'—*in other words, where defendant is under no duty to make the conditions of their association any safer than they appear to be. In such a case it does not matter that plaintiff is coerced to assume the risk by some force not emanating from defendant, such as poverty, dearth of living quarters, or a sense of moral responsibility. If, on the other hand, defendant is not privileged to put plaintiff to the choice of taking or leaving a danger, the mere posing of the dilemma takes away the voluntary character of any assumption there may be of the risk." (Emphasis supplied.)

Upon the basis of the foregoing it is to me apparent, absence of voluntariness in the relationship between a damaged third party on one hand, and the first party supplier of intoxicants on the other, precludes any application of assumption of risk as a supplier defense.

Dealing as we are with a statutory cause of action and duty unknown to the common law, not predicated on a finding of negligence between an injured third party and the supplier of intoxicants, I would not so broaden or extend the assumption of risk doctrine as to make it available in an action brought under the statute here involved.

III. Pursuing this phase of the subject one more step, the majority states we have held the assumption of risk doctrine is applicable to actions under our guest statute, therefore it must now apply to dram shop actions. I agree a guest may assume the risk of recklessness or intoxication of a host driver. Bohnsack v. Driftmier, 243 Iowa 383, 392, 52 N.W.2d 79. Our guest statute, however, restricts right of recovery under the common law, whereas dram shop laws provide a basis for recovery foreign to that law. The two do not stand in the same shoes. See Howlett v. Doglio, 402 Ill. 311, 83 N.E.2d 708, 713, 6 A.L.R.2d 790.

In the first place our guest statute serves in effect to preclude recovery by a guest for ordinary negligence of the host driver. Inferentially this means an automobile guest assumes the risk of ordinary negligence on the part of a host. As stated supra, this statute does nothing more than restrict a common law right of recovery as between consensual parties. See Horst v. Holtzen, 249 Iowa 958, 962, 90 N.W.2d 41, and Fritz v. Wohler, 247 Iowa 1039, 1041, 78 N.W.2d 27.

Dram shop acts, however, do not provide a defense to common law actions for negligence, serving only to create a new statu-

tory basis upon which recovery may be had from suppliers of intoxicants for damages resulting from the furnishing of such beverages.

Stated otherwise, our guest statute precludes recovery from the host by reason of negligence alone. Conversely, our dram shop acts provide a statutory basis of recovery without regard to negligence. The two are not comparable and an erroneous analogy should not be decisive of the issue now before us.

IV. Furthermore, I again submit sections 123.95 and 129.2, Code of Iowa, 1966, commonly referred to as dram shop acts, were enacted for the socially beneficial purpose of deterring the sale or gift of intoxicants to any person to the point such individual becomes intoxicated. Some courts have even held legislation of this nature is penal in character. 1958 Univ. of Ill.L.Forum, page 175, 181, and 48 C.J.S. Intoxicating Liquors § 431, page 717. In any event, Code sections 123.95 and 129.2, must, as previously observed, stand as a legislative declaration of public policy for the protection of society.

I am accordingly persuaded assumption of risk as a defense to an action by an injured third party, caused by an intoxicated second party, which intoxication was induced by sale or gift of intoxicants by a statute violating first party, will serve, in effect, to unduly undermine and erode the very aim, objective and purpose of our dram shop acts.

If for no other reason, the majority holding on the issue at hand, is not to me acceptable in that it is contrary to public policy.

V. Finally I submit, our dram shop acts serve to impose upon all coming within their purview a restrictive statutory duty. And, since the duty so fastened by law upon defendant-Athletic Club constitutes an obligation to the public, it could not be waived by plaintiff. By the same token this defendant cannot be allowed to defend on the ground that plaintiff, being one of the class for whose protection the law was enacted, assumed the risk.

In support of these views see Narramore v. Cleveland, C., C. & St. L. R. Co., (6 Cir.), 96 F. 298, 300–305, 48 L.R.A. 68, cert. den. 175 U.S. 724, 20 S.Ct. 1021, 44 L.Ed. 337; Shahinian v. McCormick, 59 Cal.2d 554, 30 Cal.Rptr. 521, 381 P.2d 377, 383–385; Casey v. Atwater, 22 Conn.Super. 225, 167 A.2d 250; L'Heureux v. Hurley, 117 Conn. 347, 168 A. 8, 10–12; Powless v. Milwaukee County, 6 Wis.2d 78, 94 N.W.2d 187, 188–191; 56 C.J.S. Master and Servant §§ 369–370, pages 1169–1172; and 65A C.J.S. Negligence § 174(7), page 303.

I join the majority in reversing, but would hold assumption of risk is not available as a defense to one standing in the position of defendant in any action brought for recovery of damages under and pursuant to either of our dram shop acts.

BECKER and LeGRAND, JJ., join in this dissent.