John Quatrano, et al., Plaintiffs-Appellees, v. Pasquale
J. Marrocco, et al., Defendants, Clarence Floring
and Frieda Floring, Defendants-Appellants.

**Gen. No. 49,635.**

First District, Second Division.
June 29, 1965.

1

McKinley & Price, and Michael M. Kenyon, of Chicago, for appellants.

Richard G. Finn and William Allen Nathenson, of Chicago, for appellees.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal in a Dram Shop action from verdicts against defendants, Pasquale J. Marrocco and Caroline Marrocco, individually, and as copartners, d/b/a "Pat and Kay's El Marrocco" and Clarence Floring and Frieda Floring, individually, and as copartners, d/b/a the "Yellow Cottage," in the sum of $15,000 for plaintiff, individually, and for $20,000 to plaintiff, John Quatrano, on behalf of his three minor children for loss of support. The other defendants, Emily T. Magisano and Eric Helfritch, individually, and d/b/a Bensenville Liquor Mart, were found not guilty. This appeal has only been perfected on behalf of defendants, Clarence Floring and Frieda Floring, d/b/a the "Yellow Cottage."

Defendants' theory of the case is: One, that the trial court erred in permitting witnesses, not named

in the Answers to Interrogatories, to testify; two, that the trial court erred in giving to the jury, plaintiff's instructions Numbers 12 and 15, over defendants' objection; and three, that the trial court erred in refusing to give to the jury, defendants' instructions Numbers 5, 6, and 7.

On May 18, 1957 plaintiff was twenty-four years old, married, and the father of three children, one to four years of age. He held two full time jobs, one, as a sheet metal worker, earning $6,400 a year, and the other as a policeman for the Village of Northlake, earning $2,100 a year. On May 17, 1957, pursuant to orders from the Police Chief of the Village of Northlake, plaintiff and his partner, Officer McLean entered "Pat and Kay's El Marrocco" dance hall at Lake Avenue and Wolf Road, Northlake, Illinois, to check for minors. Officer McLean returned to the squad car to receive messages via the radio. Plaintiff, meanwhile, stood at the end of the bar in full uniform, looking over the crowd. He felt something grab at his gun. He turned around and saw a "big guy in a tee shirt." Plaintiff's gun discharged and a bullet entered his body at a point beneath his right shoulder, plunged through his right lung and his seventh dorsal vertebra and lodged in the left side of his back. His assailant's name was David Richter.

Richter, testifying for plaintiff, stated that he returned from the Air Force on May 16th, and that on May 17th, at about 2:00 p. m., he and a companion, Michael Martyniuk, went to the "Yellow Cottage" and stayed there until about five o'clock and were served drinks by a "heavy set man." He further stated that he had from ten to fifteen bottles of beer and two or three shots of whiskey; that Martyniuk drove him home; that at about 5:45 p. m., after having a sandwich, Martyniuk picked him up; that they returned to the "Yellow Cottage" where Richter had five more

4

bottles of beer; that on the second visit to the "Yellow Cottage" he saw a friend of his mother's, Mrs. Helen Nelson, and spoke to her; that he left the "Yellow Cottage" with Martyniuk at approximately 8:00 p. m., and picked up Rosetta DiMicelli; that they went to the Bensenville Liquor Mart, where Richter bought five quarts of beer and drank two or three of them; that they drove the girl home and went to "El Marrocco" at about 11:30 p. m., where Richter recognized a friend named Robert Block. Richter testified he spilled one beer at the bar; that he noticed plaintiff standing near him; that plaintiff had on a brown leather belt and a holster which contained a chrome pearl-handled gun; and that he nudged Block saying, "Watch this." He also testified that he pulled the gun out of the holster with the intention of sticking the man in the back saying, "draw" but that when he turned around and got hold of the gun "it went off and fell to the floor." He further testified in answer to the question "Just a minute—were you sober or intoxicated at this time?" that he was "intoxicated." Other eyewitnesses verified that Richter was drunk. Martyniuk did not testify, being in California.

Helen Nelson testified for plaintiff and on direct examination stated that she knew David Richter and his parents since he was a little boy; that on the evening of May 17th, she saw Richter at the "Yellow Cottage" in Bensenville, where she had gone about 7:30 p. m. with one Dorothy Nunnelly; that she knew the proprietor; that she saw Richter standing at the end of the bar when she came in, and that he greeted her; that Richter did not remain there very long, perhaps fifteen or twenty minutes and then left saying, "Good bye Mrs. Nelson"; that she was not seated close to Richter nor was she paying any attention to what he was doing; and that he left with another man. She testified on cross-examination that she discussed the

5

shooting with a Mrs. Floring several days later; that she did not recall whether Mrs. Floring was in the tavern that evening; and that she had been subpoenaed to testify one week before the trial.

Mrs. Floring testified that she and her husband owned the "Yellow Cottage" in Bensenville and lived above it; that they had no other help in the operation of the tavern; and that on May 17, 1957, Richter and another young man came to her place, where he greeted Mrs. Nelson at the bar, and talked to her for about fifteen minutes. She denied that she served Richter or his friend any alcoholic beverages but stated that she requested them to leave. She further stated that about an hour later they returned and she told them they could not come in her place and that a few days later, Mrs. Nelson told her about Richter and what had happened at "El Marrocco." She also testified that she could not say whether or not they had been drinking.

After Quatrano was shot, he was taken to Memorial Hospital in Elmhurst, where he was X-rayed. It was discovered that the bullet had gone through the right lung, crushed the seventh thoracic vertebra and lodged in his back. The bullet was removed several months later at which time he was hospitalized for three months. X-rays revealed a deformity of the spine. Plaintiff complained of stiffness and pain between his shoulders. Dr. Gutzmer described the condition as not only permanent but also progressive and recommended a spinal fusion. Dr. Michaels, an orthopedic surgeon, recommended a hypertension body jacket. He also testified that the bullet penetrated one of the vertebrae of the back and stated the condition was permanent and recommended a spinal fusion, which would require hospitalization for anywhere from two to three and a half weeks and the use of a brace or plaster cast for a minimum of seven to nine months in order to solidify the fusion.

6

The plaintiff returned to work on October 1, 1957 as a sheet metal worker. He testified he was not able to do the work he had done before because his back bothered him and he tired easily. He stated that during the years 1958 and 1959 he experienced difficulty with his back and that during the year 1960, his back bothered him quite a bit.

Sometime after the occurrence a divorce decree was entered on complaint of plaintiff's wife. At the time of the trial, his children, Cynthia, age 11, and Dante, age 8, were living with him and Michael, age 7, was living with his wife, who had remarried. All three children attended parochial schools, for which he paid the tuition, and he also contributed to Michael's support whenever he could.

The first allegation of error raised by defendants is that the trial court allowed witnesses to testify whose names were not listed in the Answer to defendants' Interrogatories. Defendants' position is that they should have been given sufficient advance notice so that they might have been able to take a deposition or statement in order to properly prepare for trial and that absent such notice the trial court should have excluded the witnesses.

Until recently, considerable confusion existed in Illinois regarding the power of a trial court to exclude witnesses whose names were not given in an answer to interrogatories. In the case of Wright v. Royse, 43 Ill App2d 267, 193 NE2d 340 (1963), an exhaustive analysis of applicable law was undertaken. Subsequently, in the case of Rosales v. Marquez, 55 Ill App2d 203, 204 NE2d 829 (1965), the court reviewed the principles which had developed and stated on page 206:

> Supreme Court rule 19–12(3), Ill Rev Stats, ch 110, sec 101.19–12(3) (1963), and the comparable rule of the Municipal Court of Chicago, rule 2,

sec 19–12, relate to pretrial discovery procedures and provide many sanctions for failure to comply with the rules pertaining to discovery. The exclusion of witnesses is not among them. However, Illinois cases have recognized the right of the trial court to refuse to permit a witness to testify. Dempski v. Dempski, 27 Ill2d 69, 187 NE2d 734; Wright v. Royse, 43 Ill App2d 267, 193 NE2d 340; Battershell v. Bowman Dairy Co., 37 Ill App2d 193, 185 NE2d 340; Nystrom v. Bub, 36 Ill App2d 333, 184 NE2d 273; Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209. Contra: Hansel v. Friemann, 38 Ill App2d 259, 187 NE2d 97. . . .

In determining whether the exclusion of a witness is the appropriate sanction to impose when his name has not been furnished or his correct address has been withheld, our courts have considered the surprise to the adverse party, the harm that has been done to his case, the nature of the witness' testimony, the timeliness of the objection to his testifying and whether the omission appears to have been intentional or inadvertent. The nonimposition of the sanction has been approved in cases where there was no surprise, or the surprise was minimal, or where the surprise and the harm caused by it were alleviated by giving the adverse party an opportunity to talk to the witness prior to his testifying, or where the witness' testimony was merely cumulative and corrobative. Miksatka v. Illinois Northern Ry. Co., 49 Ill App2d 258, 199 NE2d 74; Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209; Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415.

■ Meanwhile, however, another problem has arisen. This problem is whether or not an answering party has a continuing duty to give the names of

8

additional witnesses, when, after answering the interrogatory in good faith, he subsequently gets information pertaining to the identity or whereabouts of a witness. This problem was discussed in Battershell v. Bowman Dairy Co., 37 Ill App2d 193, 185 NE2d 340 (1962) in which the court stated at page 200:

In some jurisdictions it has been held that an interrogatory such as the one in question imposes a continuing duty upon the party answering to disclose additional information when discovered, and some rules of procedure so specify. Burke v. Central R. R., 42 NJ Super 387, 126 A2d 903 (App Div 1956); Abbatemarco v. Colton, 31 NJ Super 181, 106 A2d 12 (App Div 1954). In other instances an analysis of the basic essence of the inquiry involved resulted in the conclusion that it was inherently continuing. Smith v. Acadia Overseas Freighters, 120 F Supp 192 (ED Pa 1953); King v. Cardin, 229 Ark 929, 319 SW2d 214 (1959). A statement to that effect in the interrogatory itself or a court order may also impose a continuing obligation to answer. It has been so held in various decisions of the federal district courts, to be found in the Federal Rules Decisions. Coyne v. Monongahela Connecting R. R., 24 FRD 357, (WD Pa 1959); Novick v. Pennsylvania R. R., 18 FRD 296 (WD Pa 1955); McNally v. Yellow Cab Co., 16 FRD 460 (ED Pa 1954); Wolf v. Dickinson, 16 FRD 250 (ED Pa 1953); Furmanek v. Southern Trading Co., 15 FRD 405 (ED Pa 1954); Kling v. Southern Bell Tel. & Tel. Co., 9 FRD 604 (SD Fla 1949); Chenault v. Nebraska Farm Prod., 9 FRD 529 (D Neb 1949); R. C. A. Mfg. Co. v. Decca Records, 1 FRD 433 (SDNY 1940); Heng Hsin Co. v. Stern, Morgenthau & Co., 20 Fed Rules Serv 33.42, Case 2 (SDNY 1954).

■■■■■■■■■■

The Court in Battershell found it did not have to decide the problem because the answering party had displayed bad faith in not giving the full and complete names and addresses of the witnesses called for in the interrogatories. See also Hansel v. Friemann, 38 Ill App2d 259, 187 NE2d 97 (1963).

Recently, a decision in the case of Dickerson v. Baltimore & O. C. T. R. Co., Appellate Court No. 49363, filed March 30, 1965, was handed down by this court. The court stated that there was no continuing duty to answer an interrogatory once the interrogatory had been answered in good faith. In the instant case we are faced with the same problem. We again hold there is no continuing duty to answer an interrogatory once the answering party has answered the interrogatory in good faith.

Evidence that the position which the Illinois Courts have taken is proper is indicated by an examination of the proposed Civil Discovery Rules of the Illinois Supreme Court Rules Committee, which provides under Discovery Rule 3:

(4) *No Continuing Duty.* If a party makes an answer that is complete when made, he has no continuing duty to supplement the answer to include information thereafter received.

NOTE: New—clears up a point over which there has been some doubt in Illinois.

It is contemplated that these rules will be in effect by next fall.

■■ In the instant case, it was proper for Helen Nelson to testify, as the trial court gave opposing counsel an opportunity to question the witness prior to the trial. Furthermore, there could be no surprise to the defense in regard to the witness, Helen Nelson, as defendant, Mrs. Frieda Floring, testified on direct

examination that she was acquainted with Helen Nelson; that she was on the premises of the "Yellow Cottage" on the date in question and that Helen Nelson had a conversation with Richter. She further testified on cross-examination that later, she discussed the shooting with Helen Nelson.

■ A different problem, however, arises in regard to witness, William Selk. Opposing counsel, was not given an opportunity to examine this witness prior to trial. We hold, however, that any error committed by the trial court was not prejudicial to defendants' case. The testimony of William Selk was only cumulative of the testimony of other witnesses that there had been a sale of liquor to Richter at "El Marrocco," that Richter was intoxicated and that the plaintiff had suffered personal injury. See Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415 (1962).

■ Defendants' next allegation of error is that the court should not have given plaintiff's Instructions Nos. 12 and 15 to the jury. Instructions Nos. 12 and 15 state as follows:

> 12. The Term "Alcoholic liquors" means and includes every liquor or solid containing alcohol, wine, beer, or spirits including brandy, rum, whiskey, and gin and capable of being consumed as a beverage by a human being, but does not mean or include any such liquor or solid which contains one-half of one per cent, or less of alcohol, by volume.

> 15. The phrase, "means of support" includes the necessities of life, and comforts as well. Whatever lessens or impairs the ability to supply suitable comforts which might reasonably be expected from the person who furnished support, considering his occupation and capacity for earning money, may be regarded as lessening or impairing the

11

"means of support" referred to in these instructions.

We disagree with defendants' allegation as to Instruction No. 12. It is true there is no evidence in the record that any brandy, rum or gin was served to David Richter. It is also true that the mere fact that instructions appear in IPI does not require that instructions be given when they are inapplicable. Plaintiff's Instruction No. 12, IPI 150.16, however, is only a definition of alcoholic liquor as found in Chapter 43, section 95.01 to 95.05 of the Dram Shop Act. We agree with plaintiff that there was sufficient evidence presented to show that Richter consumed thirty 12-ounce bottles of beer, plus some whiskey. The jury was not confused by the fact that brandy, rum and gin were included in the instructions. Whatever error took place by the mentioning of these alcoholic beverages was not prejudicial to defendants' cause.

■ We further hold that the court did not err in giving the jury the IPI Instruction No. 12, defining means of support. It is defendants' position that the IPI instruction is much too broad in that it speaks of impairment of ability rather than actual impairment of the means of support. We find this distinction much too subtle. Impairment of ability is tantamount to actual impairment of means of support. Furthermore, adequate evidence was submitted to show that plaintiff had actually been rendering support to his wife and minor children.

Defendants' third allegation of error is that the court should not have refused defendants' Instructions Nos. 5, 6 and 7. Instructions Nos. 5, 6 and 7 state as follows:

*Instruction No. 5:* The plaintiff, John Quatrano, for the use of the persons whom I have called the

12

real parties in interest, has the burden of proving each of the following propositions:

. . . . . .

2. That the defendants William Clarence Floring and Frieda Floring, his agents or servants, sold or gave intoxicating liquor consumed by David Richter.

. . . . . .

5. That as a direct and proximate result of the occurrence, one or more of the persons whom I have called the real parties in interest have suffered injury to their means of support.

If you find from your considerations of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff, but if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendants, William Clarence Floring and Frieda Floring, individually and as copartners doing business as the "Yellow Cottage."

*Instruction No. 6* is essentially the same as Instruction No. 5 except that it refers to the claim of plaintiff's children for loss of support.

*Instruction No. 7:* The Court instructs the jury that if you believe from the evidence that the occurrence complained of was or could have been occasioned by negligence or want of caution on the part of John Quatrano or by any other cause outside of intoxication, if such negligence or want of caution did not arise from intoxication, then there can be no recovery and you should find the defendants, William Clarence Floring and Frieda

13

Floring, individually and as co-partners doing business as the "Yellow Cottage" not guilty.

■ There was no need for the court to receive Defendants' Instructions Nos. 5 and 6. The same defect is apparent in each of these instructions. Each of them requires, as a condition precedent to recovery by plaintiff, that the proof show that defendants, William and Frieda Floring, sold or gave intoxicating liquor, which was subsequently consumed by Richter. In each of these instructions, the possibility that plaintiff and his children could make out their case against the other defendants is ignored. Plaintiff's Instruction No. 13, which was given by the court, adequately covered the area. Instruction No. 13 applies to all of the defendants, and under it, if plaintiff failed to prove any of the claims of his case against any of the defendants, he could not recover against that defendant. Plaintiff's Instruction No. 14 was also given. This instruction had the same effect as plaintiff's Instruction No. 13, except that it referred to the claim of plaintiff's children for loss of support. We can only conclude that the court did not err in refusing defendants' (Florings) Instructions Nos. 5 and 6.

■■ The court did not err in refusing defendants' tendered Instruction No. 7. In the first place, it is fundamental that instructions should not be given if no evidence is submitted. In the instant case, no evidence was submitted of any negligence on the part of plaintiff.

■■ Secondly, plaintiff's cause of action was not grounded on negligence; thus contributory negligence cannot constitute a defense. Taylor v. Hughes, 17 Ill App2d 138, 149 NE2d 393 (1958). Defendants cite the case of Hill v. Alexander, 321 Ill App 406, 53 NE2d 307 (1944) in support of their claim that contributory negligence constitutes a defense to a Dram Shop

14

action. The case does not stand for this proposition in that the court stated at page 418:

"A party complaining of the wrongful act of a tavern keeper in causing the intoxication of another, from which damage results to him, must not be an active and willing agent with the tavern keeper, assisting in causing such intoxication. *However, this does not state a rule of contributory negligence.*" (Emphasis supplied.)

Finally, there are cases which hold that a person who is "in pari delicto" with a tavern keeper and either causes or contributes to cause the intoxication of another cannot recover under the Dram Shop Act. Phenicie v. Service Liquor Store, Inc., 23 Ill App2d 492, 163 NE2d 220 (1960). These cases, however, are not applicable where the injured person in no way contributes to the intoxication of another, drinks with him, or provokes an attack upon himself. We conclude that the court did not err in refusing Instruction No. 7 for the above reasons. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.