ROY ROGERS, Plaintiff-Appellee, *v.* CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellant.

Fifth District  No. 77-301

Opinion filed April 20, 1978.

James P. Daley and George H. Brant, both of Chicago, and Richard M. Roessler, of Gundlach, Lee, Eggman, Boyle, & Roessler, of Belleville, for appellant.

Morris B. Chapman, of Chapman & Chapman, and Robert W. Bosslet, both of Granite City, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal by the Chicago and North Western Transportation Company, defendant, from a judgment entered on a jury verdict in the Circuit Court of Madison County in favor of the plaintiff, Roy Rogers, in the amount of $200,000. Defendant contends that: (1) the issue of the plaintiff's contributory negligence was erroneously withheld from the jury's consideration; (2) the trial court incorrectly ruled on certain objections to evidence; and (3) the closing argument of plaintiff's counsel was prejudicial to the defendant and denied it a fair trial.

The plaintiff has been employed as a carman by the defendant since May 1965, and, as a result of his seniority with the railroad, he came to hold a job in April 1975 as the assigned driver of a two-ton truck, which was furnished with a winch and hoist and used to rerail freight cars which had become untracked. On April 29, 1975, the plaintiff was assigned to drive the truck from Madison, Madison County, to the scene of a derailment at National City Yards with Norman Graham assigned as his passenger and assistant. After arriving at the National City yards, the two men discovered that the truck was inadequate for the job required of it and, consequently, they proceeded to return to Madison via Route 203. On their return trip the plaintiff, while driving at the speed of 40-45 mph, experienced a complete brake failure several hundred feet short of the intersection of Route 203 and Bend Road. With the air brakes gone, the plaintiff proceeded through a red light at the aforementioned intersection where he was unable to avoid a collision with the trailer of a truck which was proceeding through the intersection on Bend Road. As a result of the collision, the plaintiff suffered injuries to his back and left side. The plaintiff brought a negligence action against the defendant pursuant to the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1970)).

The first issue on appeal is the question of the plaintiff's contributory negligence. At the commencement of trial on February 2, 1977, the defendant admitted its negligence was a proximate cause of the plaintiff's injuries, while reserving the questions of the nature and extent of the plaintiff's damages and the plaintiff's contributory negligence. Prior to the commencement of trial, the court granted the plaintiff's motion *in limine* to exclude all evidence concerning the plaintiff's alleged previous knowledge of the truck's defective brakes. The trial court reasoned that, as a matter of law, plaintiff's operation of the truck with such knowledge could only be classified as evidence of assumption of the risk and not as contributory negligence and as assumption of risk is not a defense under the Federal Employers' Liability Act (45 U.S.C. §54 (1970)), the evidence was inadmissible.

In its offer of proof, the defendant showed that on April 26, 1975, another North Western employee, Oscar Gerstner, had experienced a serious brake failure with the truck when the air brakes had failed causing the truck to proceed through an intersection against a red light. The next day, Gerstner reported the incident to his local union chairman, Robert Graham, brother of Norman Graham, and asked that he inform North Western car foreman, Robert Manes, of the truck's unsafe condition and bar its continued use. On April 28, 1977, Gerstner had a similar conversation with Robert Graham in the presence of the plaintiff, who was also a union official. On that occasion Gerstner repeated the description of his experience with the truck and insisted that Graham and

the plaintiff take action to make Manes aware of the truck's defective brakes. The defendant further showed in its offer of proof that during the plaintiff's outbound trip to the National City yards he had experienced difficulties with the truck's brakes. At that point the plaintiff allegedly stated to Norman Graham that the truck was not stopping as it should. The defendant's offers of proof were denied.

The defendant contends that evidence of the plaintiff's operation of the truck in a manner heedless of the known danger which was presented by the truck's defective brakes was improperly withheld from the jury's consideration. Under the F.E.L.A., neither contributory negligence nor assumption of risk are available as defenses to an action brought by a railroad employee (45 U.S.C. §§53, 54 (1970)); instead, the legislation is based on comparative negligence whereby an employee's contributory negligence shall be considered by the jury in diminution of the plaintiff's damages "in proportion to the amount of negligence attributable to such employee * * *" (45 U.S.C. §53 (1970)). In this regard, it has been held that the slightest evidence of contributory negligence is enough for the defendant to reach the jury on that issue, just as the same standard is available to the plaintiff in attempting to show railroad negligence. *Ellis v. Union Pacific R.R. Co.*, 329 U.S. 649, 652-53, 91 L. Ed. 572, 576, 67 S. Ct. 598, 600 (1947); *Ganotis v. New York Central R.R. Co.*, 342 F.2d 767 (6th Cir. 1965).

Relying on *Dixon v. Penn Central Co.*, 481 F.2d 833 (6th Cir. 1973), the plaintiff contended in the trial court, and now on appeal, that the question of the plaintiff's knowledge of the defective condition of the trucks brakes could only be termed in the nature of assumption of risk as plaintiff's employment required him to operate a defective motor vehicle. We disagree with the plaintiff and further find *Dixon* to be both factually and legally distinguishable from the case at bar. *Dixon* involved a railroad employee who was engaged as a tower operator and, as such, was required to periodically throw certain switches, one of which he observed to be faulty. He reported the defect, and railroad mechanics were dispatched to effect repairs at trackside while he remained in the tower where the switch was located. Subsequently, having been advised by the mechanics by means of a prearranged signal that the track switch had been repaired and in proper working order, Dixon attempted to operate the switch and sustained a back injury.

Under such circumstances, the *Dixon* court found that the employee could not have been said to be guilty of any conduct which might fairly be described as contributory negligence, as the evidence indicated he was injured while attempting to perform his assigned duties in operating a switch which he thought to be in working order. The court reasoned that the whole point of Dixon's attempt to throw the lever was to ascertain

whether it was fixed which could not be determined unless it was, in fact, tested. The court ruled that if the employee could be guilty of any unreasonable behavior it could only be labeled as assumption of risk. The *Dixon* court further noted that there was no suggestion by the defendant that the employee's actions were unusual or that he was in any way negligent in interpreting the signals given him by the mechanics. While noting that assumption of risk is not a defense in F.E.L.A. cases, the court in *Dixon* recognized its interplay with the partial defense of contributory negligence stating:

> "It is often difficult to decide whether a particular fact situation is classifiable solely as assumption of risk, solely as contributory negligence, or as some mixture of the two, '[T]he defenses * * * overlap, and are as intersecting circles, with a considerable area in common, where neither excludes the possibility of the other' W. Prosser, Law of Torts §67, at 451 (3d ed. 1964)'." (481 F.2d 833, 835.)

See also *Beanland v. Chicago, Rock Island & Pacific R.R. Co.*, 480 F.2d 109, 116 (8th Cir. 1973); *Murray v. New York, New Haven & Hartford R.R. Co.*, 255 F.2d 42, 44 (2d Cir. 1958).

■■ We are of the opinion that there was sufficient evidence to distinguish the plaintiff's situation from that of Mr. Dixon. Unlike Dixon, it appears under the offer of proof that defendant would introduce evidence that the plaintiff was aware that he was dealing with a seriously defective and unrepaired instrumentality. He allegedly had been advised that the truck had experienced a total brake failure and, as a union representative, urged to ground the vehicle until it could be repaired. In addition, there was evidence that on the day of the accident he experienced faulty brake operations in the course of the trip to the National City Yards, but he continued to operate the vehicle. We are not persuaded by the plaintiff's assertion that no evidence as to what procedures are to be taken by employees should they experience mechanical difficulty with company vehicles was presented by the defendant. The plaintiff's status as an employee does not deprive him of his individual responsibility to act in a manner conscious of his own safety and that of others. Based on the evidence excluded by the trial court, we cannot say that the plaintiff's conduct was reasonable, as a matter of law, so as to rule out a determination of contributory negligence.

Admitting that defendant was negligent in furnishing plaintiff a truck with defective brakes, the manner of the truck's operation including speed and other precautions should have been admissible for the jury's consideration in determining plaintiff's contributory negligence, if any. As to assumption of risk, the plaintiff, in a proper case, is fully protected by the giving of Illinois Pattern Instructions, Civil, No. 160.09, which instructs the jury that an injured railroad employee shall not be held to

have assumed the risks of his employment where the injury resulted from the negligence of the railroad. Assumption of risk is not a rule of evidence, but a doctrine that says, in the master-servant context, that even though an employer is negligent, the employee who knowingly submits himself to a danger that he is aware of, may not recover. But the employee's conduct may also be evidence of contributory negligence. (See W. Prosser, Law of Torts §68, at 439-453 (4th ed. 1971).) We therefore conclude that the trial court's exclusion of this evidence was error, and hold that the issue of the plaintiff's contributory negligence under these facts was for the jury to decide.

As we have already noted, under section 3 of the Federal Employers' Liability Act (45 U.S.C. §52 (1970)) contributory negligence only serves to reduce a plaintiff's damages in proportion to the amount of negligence attributable to him. In the instant cause, the defendant has admitted liability and, consequently, we need only remand this case for a new trial as to damages. In this regard, we disagree with the plaintiff's contention, citing *Thatch v. Missouri Pacific R.R. Co.*, 47 Ill. App. 3d 980, 362 N.E.2d 1064 (5th Dist. 1977), that the defendant is not entitled to a new trial on damages, but only to a jury determination of the extent, if any, to which plaintiff's damages should be reduced by his own contributory negligence. The plaintiff misconstrues the holding in *Thatch* which included a stipulation by opposing counsel that a new trial on the issue of contributory negligence was all that was required. Moreover, in *Thatch*, this court was satisfied that the failure to submit the issue of contributory negligence to the jury did not affect its determination of the plaintiff's damages. Neither of these factors are present in the case at bar. We agree with the defendant that this error by the trial court, and others that we shall discuss, prejudiced the defendant's position in the previous trial and may have inadvertently invited the uninformed jury to punish the defendant for placing an unknowing employee in a defective piece of equipment. As a result, we must reverse and remand this cause for a new trial on the entire issue of the plaintiff's damages.

Having concluded that there will be a retrial on the question of damages, we need to address the other points raised by the defendant to ensure that no further error will occur after this case is remanded. The defendant's second contention is that the trial court erred in allowing the plaintiff to introduce evidence of the cost of his medical expenses, since all of his expenses had been previously paid by the defendant or its insurer, the Travelers Insurance Company, under Policy GA-23000 which is an industry wide health and welfare plan. Despite the defendant's documentation evidencing the source of the payments for the plaintiff's medical expenses, the trial court treated the payment as a collateral source and permitted the plaintiff to introduce evidence of the cost of his

medical care, while barring the railroad from advising the jury of the prior payment. The defendant's position on this matter, and not disputed by the plaintiff, is simply that article V, section 1(d)1, of the collective bargaining agreement of August 1960, still in effect today, states that the premiums paid by the defendant for insurance benefit payments are not considered as wage equivalents. This means that the money used to pay the premiums would not otherwise be paid to employees in the form of wages. In fact, there is evidence that this provision, historically, was inserted in the collective bargaining agreement at the employees' insistence that these insurance benefits not be considered wages or a fringe benefit. See *Thomas v. Penn Central Co.*, 379 F. Supp. 24 (W.D. Pa. 1974).

The plaintiff's position is that the Federal courts are divided on this proposition and that some authority supports the trial court's decision to treat the defendant's payment of the plaintiff's expenses as a collateral source. The plaintiff also asserts that the entire issue was ended below by the defendant's stipulation to the effect that the trial court might consider the matter after verdict and grant the defendant a setoff against the verdict in the amount of medical expenses previously paid. We have carefully examined the record and are satisfied that the defendant at no time abandoned its position on this point or stipulated that any error in submitting evidence of the plaintiff's medical expenses to the jury might be cured after trial by simply reducing the verdict by the amount of the medical expenses. The defendant merely stipulated to the amount of the medical expenses and nothing more.

The cases cited by the plaintiff, *Blake v. Delaware & Hudson Ry. Co.*, 484 F.2d 204 (2d Cir. 1973), *Hall v. Minnesota Transfer Ry. Co.*, 322 F. Supp. 92 (D. Minn. 1971) and *Urbaniak v. Erie Lackawanna Ry. Co.* 424 F. Supp. 981 (W.D. N.Y. 1977), all involved a construction of the payments under Travelers Group Policy GA 23000 as a collateral source. However, these decisions have been distinguished or questioned by other federal cases where, after the issue has been studied in greater detail, the courts have ruled that GA-23000 does not constitute a collateral source (see *Nelson v. Penn Central R.R. Co.*, 415 F. Supp. 225 (N.D. Ohio 1976); *Thomas v. Penn Central Co.*, 379 F. Supp. 24 (W.D. Pa. 1974)). The most recent decision on the issue is that of *Urbaniak v. Erie Lackawanna Ry.*, cited by the plaintiff. However, a careful reading of that opinion reveals that the court felt constrained to follow *Blake* after finding no specific provision in the collective bargaining agreement before it, notably article V, section 1(d)(1), such that would sufficiently show that the defendant railroad was entitled to a credit for payments received by the plaintiff under GA-23000.

The court in *Nelson v. Penn Central R.R. Co.*, upon analyzing the

question of whether Travelers Group Policy GA-23000 is a collateral source, stated:

> "The Court further agrees that whether the insurance is provided as the result of a collective bargaining agreement is not, in and of itself, dispositive of the collateral source question. [Citation.] In this case, however, the bargaining agreement went further than merely stating that the employer should pay the insurance premiums. The agreement expressly provided that the amount paid as premiums was not to be considered as a wage equivalent. Thus the union agreed that the benefits were not being provided in lieu of wages. * * * The character of this insurance policy is not, therefore, that of a fringe benefit given in part consideration for the plaintiff's services as an employee. It, therefore, also is not a collateral source." 415 F. Supp. 225, 226-27.

■■ We agree with the reasoning of the *Nelson* court and believe that its determination of the inapplicability of the collateral source rule to GA-23000 in light of the specific provision contained in the collective bargaining agreement is correct. This view is consistent with the general rule in this State that a tortfeasor may only decrease the amount of damages by the amount of hospitalization or medical insurance payments received by the injured party where the tortfeasor has been the source of the insurance premium payments. (See *Biehler v. White Metal Rolling & Stamping Corp.*, 30 Ill. App. 3d 435, 333 N.E.2d 716 (3d Dist. 1975); *Bireline v. Espenscheid,* 15 Ill. App. 3d 368, 304 N.E.2d 508 (3d Dist. 1973).) This court, therefore, concludes that in this case the item of medical services is not to be included in the special damages to be submitted to the jury because they have been paid by the defendant's insurance company under a policy for which the defendant paid the premiums and not as wages.

The defendant next contends that the trial court's exclusion of the defendant's payroll records from evidence was error. The defendant sought to admit its payroll records into evidence to make the jury aware of the plaintiff's post-accident overtime earnings in its consideration of the issue of the plaintiff's future loss of earnings. The trial court ruled that the records were inadmissible because they had not been provided to plaintiff's counsel pursuant to the plaintiff's production request of July 11, 1975. We note that the plaintiff production request of July 11, 1975, sought "all payroll records of the plaintiff for a period of three years prior to his alleged accident to the present"; however, the plaintiff did not resume work following his accident until July 14, 1975; therefore, it was chronologically impossible to include records which did not then exist for overtime that the plaintiff had not yet worked as part of the defendant's

production response. We also note that the plaintiff made no further effort to secure these additional records through the use of supplemental interrogatories to the defendant prior to trial.

■■■ By virtue of Supreme Court Rule 213(e) (Ill. Rev. Stat. 1977, ch. 110A, par. 213(e)) a party who has made an answer to an interrogatory that is complete when made is under no duty to supplement the answer to include information thereafter received in the absence of a timely supplemental interrogatory. (See *Kujala v. Jackson*, 123 Ill. App. 2d 11, 259 N.E.2d 648 (1st Dist. 1970); *Quatrano v. Marrocco*, 61 Ill. App. 2d 1, 208 N.E.2d 632 (1st Dist. 1965).) Moreover, it cannot be said that the defendant intentionally withheld this information from the plaintiff or that the plaintiff was unaware of its existence. Indeed, it was the plaintiff who, prior to trial, served his motion on the defendant requiring the defendant to produce at trial the very witness and payroll records he subsequently persuaded the trial court to exclude. Under these circumstances we believe that the trial court's exclusion of the defendant's payroll records was error and direct that the defendant be allowed to introduce this evidence at the new trial.

■■ The defendant next argues that the trial court improperly restricted the reading of the evidence depositions of two doctors called by the defense, Drs. Stohr and Scheer, both of whom had prescribed neither treatment nor medication for the plaintiff. The effect of the court's ruling was to bar Dr. Stohr and Dr. Scheer from relating any information regarding the medical history provided to them by the plaintiff or regarding the results of any clinical studies which required the plaintiff's cooperation, such as the straight leg raising test. The plaintiff contends that the trial court's ruling was correct inasmuch as only treating physicians, as opposed to examining physicians, may testify with regard to a plaintiff's medical history or subjective complaints. However, the defendant asserts that neither Dr. Stohr nor Dr. Scheer examined the plaintiff solely for the purpose of testifying at trial. Moreover, the defendant argues that the only restrictive rule of evidence in this State which relates to the relationship between a litigant and a physician is that which restricts the testimony of doctors who are consulted by the plaintiff solely for the purpose of acquiring their trial testimony in the plaintiff's behalf.

The record reflects that Dr. Stohr, a neurosurgeon, saw the plaintiff on May 2, 1975, four days after his accident of April 29, 1975, upon a referral from the plaintiff's original treating physician, Dr. Lay. Dr. Stohr gave the plaintiff a complete physical examination, received his medical history and reviewed X-ray reports of the plaintiff. Dr. Stohr concluded that the plaintiff's injuries to his left thigh accounted for his complaints of

numbness in both the thigh and left foot and that the condition was likely to improve with no further treatment indicated. Under such circumstances we would conclude that Dr. Stohr qualified as a treating, or attending, physician, and thus he could base his testimony both on objective and subjective symptoms. An examining physician is one who examines a person for purposes of testifying in a trial (see *Jensen v. Elgin, Joliet & Eastern Ry. Co.*, 24 Ill. 2d 383, 182 N.E.2d 211 (1962); *Braswell v. New York, Chicago & St. Louis R.R. Co.*, 60 Ill. App. 2d 120, 208 N.E.2d 358 (5th Dist. 1975)); it is clear in this cause that Dr. Stohr did not examine the plaintiff for this limited purpose, regardless of his conclusion that the plaintiff had suffered an injury which would improve with time and which required no further treatment. We therefore find that the trial court incorrectly labeled Dr. Stohr an examining physician and erroneously restricted the reading of his evidence deposition.

Dr. Scheer, an orthopedic surgeon, examined the plaintiff on August 20, 1976, at the defendant's request. Dr. Scheer also obtained a medical history from the plaintiff, reviewed his X rays and gave him a physical examination which included tests of his reflexes, an examination of the muscle structure of his legs and back, as well as requiring the plaintiff to perform the straight leg raising test. Dr. Scheer's clinical results were all negative and it was his opinion that the plaintiff's low back complaints were the product of an aggravated soft tissue strain. Based on the results of this examination, Dr. Scheer reported to the defendant that the plaintiff was physically able to return to work. We are of the opinion that under these circumstances Dr. Scheer was, quite clearly, an examining physician in the general sense of term. However, we do not believe that such a finding necessarily restricted his testimony to purely objective conditions.

The defendant contends that a defendant's examining physician should not be precluded from testifying regarding matters of medical history related to him by the plaintiff or concerning his observations of outward manifestations within the plaintiff's control. It is the defendant's position that the purpose of the exclusionary rule regarding testimony of examining physicians is not because of lack of confidence in the doctors, but in recognition of the fact that the plaintiff himself may be inclined to falsify symptoms. The defendant argues that such a rationale doesn't apply when the plaintiff is sent to the defendant's nontreating expert inasmuch as the law's confidence in the plaintiff's candor cannot be said to be undermined. Moreover, the defendant asserts that the trial court by restricting the reading of Dr. Scheer's evidence deposition disregarded the rule that any witness may testify regarding admissions made to him by a party litigant. It is the defendant's position that the fact such admissions

might be made to a doctor in no way serves to bar their admissibility or prevent the doctor from reaching a diagnosis based thereon. The defendant points out that by the restrictions which the court imposed the jury was denied the plaintiff's report to Dr. Scheer of freedom from numbness, denied the knowledge of the results of Dr. Scheer's straight leg raising test, denied any knowledge of the nature of Dr. Scheer's clinical study of the plaintiff and findings thereon, and denied knowledge of the doctor's opinion that he found the plaintiff to be reasonably healthy.

■■ It is well settled that statements of pain and symptoms are admissible as an exception to the hearsay rule, if made by a patient to a physician for purposes of diagnosis and treatment, on the theory that the desire for proper treatment outweighs any motive to falsify. (*Jensen v. Elgin, Joliet & Eastern Ry. Co.*, 24 Ill. 2d 383, 182 N.E.2d 211 (1962).) However, physical demonstrations capable of simulation or declarations made to a physician who has made an examination shortly before trial, apparently for the purpose of qualifying himself to testify at it, are inadmissible based on the theory that they are self-serving. (*Shaughnessy v. Holt*, 236 Ill. 485, 86 N.E. 256 (1908); *Greinke v. Chicago City Ry. Co.*, 234 Ill. 564, 85 N.E. 327 (1908).) The restriction on the scope of an examining physician's testimony has been applied by the courts in this State over the years without regard to the party for whom the physician examined the injured person.

One of the earliest recitations in this State of the latitude within which a physician may testify concerning the cause of a patient's condition at a particular time is found in *Illinois Central Ry. Co. v. Sutton*, 42 Ill. 438 (1867). The *Sutton* court reasoned that a physician must necessarily, in forming his opinion, be to some extent guided by what the patient may have told him in detailing his pains and sufferings. The court held that not only is the physician's opinion, founded in part upon such information, admissible into evidence, but that he may also relate what the patient said in describing his physical condition "if said under circumstances which free it from all suspicion of being spoken with reference to future litigation, and give it the character of *res gestae*" (42 Ill. 438, 441). The basis of the rule that exists today was apparently first formulated 30 years after *Sutton* by our supreme court in *West Chicago St. R.R. Co. v. Carr*, 170 Ill. 478, 48 N.E. 992 (1897). The court examined the rule regarding the admissibility of declarations of an injured party to an attending physician as it then existed in other jurisdictions and found much confusion. After examining several interpretations and modifications of the rule the court stated:

> "We think, however, the correct rule to be deduced from that laid down by Greenleaf, and most conducive to justice is, that such

declarations, being in favor of the party making them, are only competent when made as part of the *res gestae,* or to a physician during treatment, *or upon an examination prior to and without reference to the bringing of an action to recover damages for the injury complained of, unless the examination should be made at the instance of the defendant, with a view to the trial."* (Emphasis added.) 170 Ill. 478, 483, 48 N.E. 992, 994.

The above statement of the rule was later quoted with approval in *City of Chicago v. McNally,* 227 Ill. 14, 17-18, 81 N.E. 23, 24-25 (1907), and in *Chicago Union Tractor Co. v. Giese,* 229 Ill. 260, 266, 82 N.E. 232, 234 (1907). However, in the often quoted statement of the rule contained in *Greinke v. Chicago City Ry. Co.,* 234 Ill. 564, 570-71, 85 N.E. 327, 330 (1908), the exception allowed to a defendant's examining physician from the testimonial restrictions on examining physicians generally is not found. We have found no case which disapproves of the complete statement of the rule as contained in *Carr* and followed in *McNally* and *Giese,* nor have we found any further authority that supports it. We are of the opinion that the reasoning and logic behind the exception as fashioned by *Carr,* continues to apply today. The recognition of this exception should not result in the admission of evidence that is in any way unreliable or self-serving to the plaintiff.

■■ ■ Moreover, another reason exists such that would preclude the restrictions imposed on the reading of Dr. Scheer's evidence deposition. Logic would dictate that all admissions made by a party are admissible as original substantive evidence when offered by his opponent because the adverse nature of the statements or actions vouch for their credibility. Such are recognized exceptions, if indeed they need be so characterized, to the hearsay rule. We can think of no reason why the fact that such admissions, either oral or by conduct, were made to a physician rather than an ordinary witness should alter the applicability of this evidentiary rule. Thus, the plaintiff's report of freedom of numbness to Dr. Scheer and the results of the straight leg raising test may all be received into evidence as admissions by the plaintiff. In fact the results of some of these tests should be properly admitted as objective findings. We therefore conclude that the trial court erroneously restricted the use of the defendant's evidence deposition of Dr. Scheer.

The defendant's final contention is certain remarks made by the plaintiff's counsel in his closing argument to the jury was prejudicial and denied defendant a fair trial. Having found that this cause must be reversed for other reasons, we need not address this issue. We trust, however, that all remarks and arguments of counsel for the respective parties on retrial will conform with those permissible boundaries designed to ensure a fair trial.

This cause is therefore remanded to the Circuit Court of Madison County with directions to enter judgment for the plaintiff on the issue of liability, and a new trial on the issue of damages is ordered consistent with the views expressed in this opinion.

Reversed and remanded.

EBERSPACHER, P. J., and JONES, J., concur.