RAMON GARCIA, Plaintiff-Appellee, *v.* CHICAGO AND NORTH WESTERN RAILWAY CO., Defendant-Appellant.

First District (2nd Division)   No. 78-1515

Opinion filed December 26, 1979.

James P. Daley and George H. Brant, both of Chicago, for appellant.

Sheldon S. Gomberg, of Chicago (Charles C. Hoppe, Jr., of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Ramon Garcia, brought this action pursuant to the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1970)) against his employer, defendant Chicago and North Western Railway Company. Plaintiff alleged that he injured his lower back while engaged in track repair when he backed into a railroad car standing on an adjacent track. Plaintiff contended that defendant was negligent in not providing a reasonably safe place to work and in failing to provide automatic equipment to do the work.

The cause proceeded to a jury trial which focused on the issues of defendant's alleged negligence, plaintiff's alleged contributory negligence, and the nature and extent of plaintiff's damages. The jury awarded plaintiff $37,000 in damages. On appeal, defendant does not contend that the evidence was insufficient to prove it was negligent. Rather, defendant claims that it is entitled to a new trial based on the trial court's alleged errors in (1) excluding certain of defendant's work records; (2) permitting plaintiff to introduce unrelated medical expenses; (3) permitting plaintiff to introduce medical expenses defendant had previously paid; (4) excluding statements contained in a consulting physician's report mentioned by a physician who testified on plaintiff's behalf; (5) admitting hearsay testimony as to a previous description of the incident by plaintiff; and (6) giving and refusing certain jury instructions relating to proximate cause and contributory negligence.

The following pertinent testimony was adduced at trial. Plaintiff was employed as a track laborer to assist in the maintenance of defendant's

track, ties, and road bed. Plaintiff normally worked in a section gang along with Vincente Guzman, another laborer, and Gerardo Reyna, an assistant foreman. He was assigned to defendant's Proviso Yards, where the tracks are laid down with 13.6-foot centers between them.

The specific task plaintiff was performing when he was injured was removing and replacing the wooden ties on which the steel rails rest. Defendant offered testimony that such maintenance work was always performed by small section gangs with hand tools, rather than the large production gangs who employ automatic equipment. The hand tools used include crow bars, to pull the spikes that join the rail to the wooden ties; jacks, to lift the rails from ties that are to be replaced; and tie tongs, to withdraw the ties. Tie tongs are scissor-like devices used to clamp onto the tie. They may be one-man or two-man in operation. If one man is doing the job, as is generally the case, he straddles the tie to be removed, leans forward, and closes the tongs onto the tie. He then pulls the tongs and the attached tie toward his body and along the ground, releases the tie, and repeats the process until the tie is withdrawn. This process permits the worker to remove the tie without moving backward. However, if a tie is particularly difficult to extract, employees may use two-man tongs. In that procedure neither man can straddle the tie, but rather the employees move with the tie as it is withdrawn, and thus additional space for the employees' movement is required.

As to the incident at bar, plaintiff testified that he was injured on the morning of May 5, 1972, while working on Track 19. He stated that he was working with Vincente Guzman under the direction of two foremen, Gerardo Reyna and Nicholas Cano. Plaintiff testified that upon arriving at the work site, he saw that there were freight cars standing on an adjacent track. Plaintiff asked that the cars be moved to create adequate room to work; similar requests had been granted in the past. In this instance, however, plaintiff testified that he was told that the cars would not be moved and he could either work or go home.

Plaintiff and Guzman set about removing ties. Plaintiff testified that a particular tie was wet and heavy, so Guzman joined him on a set of two-man tongs and together they began to pull very hard. Plaintiff testified that while so attempting to remove the tie, he backed into one of the freight cars he had requested be removed.

Plaintiff felt a pain in his back and told Reyna and Cano that he wanted to see a doctor. After reporting the accident to a clerk in defendant's office, plaintiff was taken to Westgate Medical Center. The doctor who examined him sent him back to work. Plaintiff continued working, returning to Westgate Medical Center a number of times, but the pain in his back persisted and increased. Finally, on December 19,

1972, the pain in his back became so intense that he felt he could not continue to work, and that weekend he checked into Wesley Memorial Hospital. He stayed there 11 days, but the doctors could find nothing. Plaintiff never worked for defendant after December 19 because the pain recurs every time he tries to work.

Edward Gonzalez was the clerk to whom plaintiff reported his injury. Gonzalez testified that although plaintiff did report to him at about 11:30 a.m. on May 5, 1972, plaintiff at that time told him the incident had actually occurred on May 4, and he had not reported it because his back did not bother him that much then.

Nicholas Cano testified that in May of 1972, he was assistant foreman of a different section gang than the one to which plaintiff belonged. However, he recalled an occasion in May of 1972 when plaintiff came from the other section gang to assist Cano and his group in replacing railroad ties, but the site was Track 4, rather than Track 19. On that day, plaintiff told Cano that plaintiff had hurt his back by backing into a gondola car, but plaintiff worked the remainder of the day and did not visit the doctor until the next day. Cano could not remember whether Vincente Guzman was present either day, but he thought that the laborers were only using one-man tongs that day because the ties were easy to remove. Cano also testified that there was only one gondola car anywhere near the work area, that it was not necessary that the car be moved, and that no one requested that it be moved.

Gerardo Reyna, who plaintiff also placed at the scene of the accident on May 5, 1972, confirmed that he was assistant foreman of plaintiff's section gang in May of 1972, but Reyna could not recall whether he himself was at work on May 4 or May 5. Reyna also did not remember whether he heard about the accident from plaintiff or someone else, or when he heard about it.

Dr. Hockman, defendant's company physician, testified that he first examined plaintiff on May 5, 1972. He returned plaintiff to work after diagnosing muscle strain. Dr. Olivella, whom plaintiff mentioned during his testimony, testified that he treated plaintiff for skin conditions on plaintiff's legs, and he did not examine plaintiff's back.

Dr. Cinta saw plaintiff periodically between April of 1973 through 1978 and treated him for his continuing back complaint. Although plaintiff's X rays and reflexes appeared normal, Cinta stated that plaintiff could have been suffering from one of several types of lower back injury that would cause pain and weakness in his right leg. Dr. Huang also examined plaintiff for complaints of low back pain and right leg weakness and came to the same basic conclusion, noting that X rays do not always show back conditions. Huang scheduled a spinal test in order to

determine whether plaintiff had a pinched nerve or was a malingerer, but plaintiff did not appear for the test. However, Huang did believe that plaintiff had some pathology in his lower back.

Dr. Hirschtick, who examined plaintiff for purposes of testifying, gave his opinion that plaintiff was suffering from lumbar disc syndrome because of a damaged disc. Other testimony by physicians and others will be discussed as pertinent to the issues raised on appeal. Indeed, in view of the fact that defendant does not explicitly argue that the evidence was insufficient to show that plaintiff was injured or that defendant was negligent, we might well have dispensed with most of the above testimony. However, defendant argues that the fact that proof of plaintiff's injury depended largely on his own subjective complaints, and the fact that plaintiff's testimony was contradicted in part by defendant's witnesses, should serve as a backdrop against which we should view the first issue raised on appeal.

■■ That issue relates to an attempt by defendant to show that Vincente Guzman did not work on May 4 or May 5 and that Gerardo Reyna did not work on May 4. These purported facts were relevant, defendant argues, not only to impeach plaintiff's credibility generally, but to corroborate Cano's testimony that the laborers were using one-man and not two-man tongs. If so, as set out above, plaintiff should have been able to remain stationary while withdrawing the tie, in which case, defendant argues, the fact that plaintiff backed up would go to the issue of his contributory negligence. While contributory negligence is not a bar to recovery under the FELA, it is to be considered by the jury in reduction of plaintiff's damages "in proportion to the amount of negligence attributable to such employee." 45 U.S.C. §53 (1970); e.g., *Thatch v. Missouri Pacific R.R. Co.* (1979), 69 Ill. App. 3d 48, 50, 386 N.E.2d 1180.

Defendant sought to prove these facts through the testimony of Shelby Datsun, who was defendant's timekeeper at Proviso Yards during May of 1972, and whose task was to maintain the attendance records of the track workers for payroll purposes. The records showed that plaintiff was present on May 4 and May 5 and Reyna worked on May 5, but that Reyna did not work on May 4 and Guzman was on vacation from May 1 through May 5.

When defendant called Datsun, plaintiff objected on the ground that Datsun was a surprise witness whose identity defendant had not previously disclosed in answer to interrogatories. Defense counsel responded that plaintiff's interrogatories requested only disclosure of occurrence and post-occurrence witnesses and the persons in the chain of command above plaintiff, though we note that plaintiff also requested "the names and addresses of all other persons * * * who have knowledge of the facts of said occurrence." Defendant's attorney stated that in any

event he did not learn of Datsun's existence as a witness until the middle of trial the week before (this exchange occurred on Monday afternoon), when the conflict between plaintiff and Cano's testimony became apparent. Only then did defense counsel become aware of the possibility of using a third person to introduce defendant's work records.

Defendant further argued that plaintiff had never submitted a supplementary request for disclosure of additional witnesses. However, plaintiff's counsel stated that that very morning, just before the lunch hour, he asked defendant's attorney "if he was going to have any problem [with the defense] calling witnesses that were not in interrogatories or subject to discovery," and defendant's attorney said "no." Defense counsel disagreed as to the exact wording of their exchange, stating that plaintiff's attorney asked him, "Do you have anybody that you should have disclosed to me previously?" Because he felt that he had never been under a duty to disclose the witness, and because the question was not simply whom he was going to call as a witness, defendant's attorney answered in the negative.

Commenting that one purpose of the discovery rules was to avoid undue surprise and noting that defense counsel became aware of the witness the week before yet did not reveal his existence when asked that morning, the court ruled that it would not be fair to let the witness testify. Defense counsel then offered to permit plaintiff's attorney to interview the witness before he testified, but the court let its ruling stand. The court later remarked that the proffered testimony was also largely cumulative.

■■ The issue is whether the trial court abused its discretion in refusing to permit defendant's undisclosed witness to testify. We believe it did not. Defendant cites *Kujala v. Jackson* (1970), 123 Ill. App. 2d 11, 17, 259 N.E.2d 648, for the proposition that a party does not have a continuing duty to update its answers to interrogatories with the names of witnesses to be called at trial. With this we agree, but in *Kujala* the plaintiff had informed the defendants, 10 days before trial, of the existence of a witness' written statement which contradicted a statement the defendants had obtained from the same witness; thus there was no surprise to the defendants, and the trial court was held to have abused its discretion in excluding the witness. In contrast, in the case at bar during trial plaintiff's attorney specifically asked defense counsel about undisclosed witnesses, and he failed to reveal a witness whom he obviously intended to call and of whom he had been aware for at least several days. Moreover, even defense counsel admitted that he would have known of the witness years earlier but for his failure to perceive the discrepancy between the deposition testimony of plaintiff and Cano. In *O'Brien v. Stefaniak* (1970), 130 Ill. App. 2d 398, 264 N.E.2d 781, the court's exclusion of a witness was upheld where the witness had not been disclosed because of poor

investigation, the trial was under way when the defendant attempted to call the witness, and the defendant did not make an offer of proof until after all the evidence. Similarly, defense counsel in the case at bar claims that he offered plaintiff's attorney the opportunity to interview the witness, but this was only after the court had ruled. Moreover, the proffered testimony was cumulative to some degree, in that the jury was already aware of some conflicts between plaintiff and Cano's testimony, nor could the testimony be said to be crucial to defendant's case. In summary, we cannot find that the court abused its discretion. Despite the informality of plaintiff's request for disclosure of additional witnesses, we believe the trial court could justifiably find that defendant's attorney failed to act in good faith in an attempt purely to surprise, and the court acted within its discretion in refusing to reward such conduct by permitting the witness to testify.

Defendant next contends that the court erred in permitting plaintiff to introduce into evidence a bill for medical expenses he accumulated at Wesley Memorial Hospital in the amount of $1422.29. Plaintiff testified that he went to the hospital because of back pains. Plaintiff's counsel then offered the bill in evidence. Defendant objected on the ground that the entries on the bill referred to tests done on plaintiff's brain as well as electrocardiograms. The court said that the only question was whether the examinations related to the incident sued upon, and the bill was introduced over objection. When defense counsel stated that some of the treatment recorded on the bill suggested that plaintiff did not visit the hospital for treatment of back injuries, the court stated that he could include that in his argument.

As part of defendant's case, Dr. Simon, the treating physician at Wesley Memorial Hospital, testified. He stated that plaintiff was brought to the hospital by a friend who said plaintiff had had a blackout. Two days after his admission to the hospital, plaintiff complained of low back pain. Plaintiff then gave a history to a Spanish-speaking doctor, saying that he had never had a blackout before, that ever since the accident he had had pain in his right leg, and that since the blackout the pain had radiated up from his leg to the right side of his body into his right arm. Dr. Simon then described the tests conducted on plaintiff's brain to determine the cause of plaintiff's blackout, all of which, like the blackout, had nothing to do with plaintiff's lower back; rather, epilepsy was diagnosed as the most probable cause. However, some X rays of plaintiff's back were taken and tests were conducted, but they showed nothing. Only $40 to $50 of the bill could be said to relate to plaintiff's low back pain. Defense counsel moved to strike the bill, but the court stated that whether the bill related to the incident was a question of fact because plaintiff testified that he went to the hospital for pains in his back.

■■ We note that defendant did not object on the specific ground that plaintiff had failed to lay a proper foundation for introduction of the bill, but only on the general basis that some of the tests did not appear to be related to plaintiff's back injury, a relevance objection. At that point, based on the evidence before it, the court made what amounts to a preliminary determination of relevance. Defendant then procured Dr. Simon, whose testimony effectively rebutted the relevance of most of the bill. We believe that left the issue, one of "conditional relevancy," for the jury. (See generally Advisory Committee's Note to Fed. R. Evid. 104(b); McCormick, Evidence §53, at 125 (2d ed. 1972).) Indeed, on more than one occasion the court expressly stated that defendant could argue this point to the jury.

■■ Defendant contends that the court erred in admitting medical expenses in the amount of $273 which defendant had previously paid and for which defendant had been reimbursed by its insurer. At trial, defendant submitted a motion *in limine*, seeking to exclude the bill because (1) it might lead to a double recovery and (2) it might be interpreted as an admission of liability. The court permitted plaintiff to introduce the bill, but the jury was not apprised of the fact that defendant had paid it. In its appellant's brief, defendant argues only that the bill did not fall within the collateral source rule, by which a plaintiff may recover for damages irrespective of any benefit he may have received from collateral sources (*Mineiko v. Rizzuto* (1965), 65 Ill. App. 2d 35, 212 N.E.2d 712), in that payment by the defendant followed by reimbursement under this specific insurance policy has already been held not to constitute payment from a collateral source. (*Rogers v. Chicago & North Western Transportation Co.* (1978), 59 Ill. App. 3d 911, 916-18, 375 N.E.2d 952.) We agree that the court erred in admitting this bill. Because reduction of the verdict by the amount of the $273 bill would eliminate any possible double recovery, a new trial is not mandated by this error. Rather, the trial court's judgment on the verdict will be reversed in part and the cause remanded with directions to reduce the verdict accordingly.

Defendant argues that the court erred in excluding statements contained in a consulting physician's report referred to by a physician who testified on plaintiff's behalf. Dr. Hirschtick, an orthopedic surgeon, testified that he examined plaintiff's lower back for purposes of testifying. He found a muscle spasm in plaintiff's lower back, which may have been caused by a trauma. He had plaintiff perform several physical exercises. He noted a loss of flexion in the spine, particularly a forward flexion restriction. He also stated that the straight leg raising test was "positive," suggesting that there was impairment in plaintiff's lower back. Plaintiff's right calf was smaller than his left, indicating some wasting of muscles.

X rays revealed no bone pathology, but X rays do not show the soft tissues. Hirschtick diagnosed a lumbar disc syndrome, damage to one of the discs in the lower spine.

Hirschtick then testified that he sent plaintiff for a consultation with a neurologist, or nerve specialist. He received a report from Dr. Lichtenstein, a neurologist, but Hirschtick had already made his diagnosis before he received the report. When plaintiff's counsel asked him if there was anything in the report that was inconsistent with his findings, Hirschtick said there was not. On cross-examination, Hirschtick said he considered Lichtenstein very competent. He then identified a letter from Lichtenstein concerning plaintiff, but stated that he did not consider it in reaching his own opinions and there was nothing in the letter to make him change his opinion. Defense counsel then tried, over plaintiff's objection, to introduce the letter into evidence so Hirschtick could read from it, but the objection was sustained.

On appeal, defendant contends that it should have been able to cross-examine Hirschtick on the report or introduce the report into evidence because, defendant argues, the report was inconsistent with Hirschtick's diagnosis. However, Lichtenstein's report stated that plaintiff showed tenderness in the lower back, pain in straight leg-raising tests and Laseque signs on the right side, a smaller right calf than the left, and limitation on movement on forward flexion of the back. All of this concurred with Hirschtick's findings. Litchtenstein found that plaintiff had a problem, one which fell more in the field of the orthopedic surgeon (Hirschtick's field) than the clinical neurologist (Lichtenstein's field). Lichtenstein also found that plaintiff had a subcutaneous growth in his middle back. The only possible inconsistencies were his statement that "[plaintiff] is otherwise a big, strong, healthy individual and early solution or resolution of his problem is essential," and his concluding remark, "Settlement of the medical-legal aspect may do much to effect improvement in the clinical picture and get him off the Public Aid roles [*sic*] and back to work."

■ We do not believe the court committed reversible error in refusing to allow defense counsel to introduce this report on cross-examination. The probative value of the only possible inconsistencies would have been far outweighed by the prejudicial effect of the doctor's asides. Moreover, the jury was already apprised of the fact that evidence of plaintiff's injury consisted chiefly of his own subjective complaints, and the term "malingerer" had already been used. Since Hirschtick had already formed his opinion prior to receiving Lichtenstein's letter, this case does not fall within *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564, which would mandate a wider scope of cross-examination. *Chicago & Eastern R.R. Co. v. Holland* (1887), 122 Ill. 461, 468, 13 N.E. 145, and *Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998, 379 N.E.2d 324, are also

inapposite. In *Holland,* the contents of the report were revealed on direct examination, while in *Tripp,* too, the witness relied on the report during direct examination. Here, all the witness said was that the report was not inconsistent with his own findings, and he did not rely on it in making those findings. Defendant could have called Lichtenstein as a witness and brought the report in that way, but declined to do so. Thus, even if the court erred in not permitting cross-examination on the report, we do not believe it was reversible error.

Defendant argues that the trial court erred in allowing plaintiff to elicit hearsay as to how the accident occurred from Edward Gonzalez, defendant's clerk, who took the accident report from plaintiff. Defendant objected after Gonzalez had established that an accident report had been filed, when plaintiff sought to elicit what was said. Ultimately plaintiff was permitted to establish over defendant's objection that plaintiff said that he was pulling a railroad tie and the tie broke, causing plaintiff to back into a gondola car and hurt his back. The trial court ruled that the statement was admissible as an admission by a party-opponent's agent, defendant's clerk.

■■ This was error. Gonzalez's recounting of what plaintiff told him, except to establish that an accident report had been made (*Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 828, 370 N.E.2d 826), could not operate as an admission by defendant. Quite simply, the statements were plaintiff's, not defendant's. (See generally McCormick, Evidence §262 (2d ed. 1972).) And from plaintiff's attorney's sidebar remarks, there is no question but that the statement was introduced to prove the truth of the matter asserted therein, and thereby to bolster plaintiff's case. Nevertheless, we do not believe this error requires reversal. Both plaintiff and Gonzales were available for cross-examination, removing the chief evil of hearsay. (See *In re Brooks* (1978), 63 Ill. App. 3d 328, 341-42, 379 N.E.2d 634.) Moreover, defendant was able to impeach both witnesses to some extent; if anything, the statement complained of gave defendant further material for impeachment. Lastly, we note that both parties conceded in their closing arguments that the accident occurred when plaintiff was pulling on a tie and he bumped into a car on an adjoining track. The only mention of the statement that the tie broke was by plaintiff's attorney, who then stated he did not believe that was how the accident happened and that defendant would be liable whether or not the tie broke. Thus, we cannot find that the court's error in admitting the statement resulted in substantial prejudice to defendant.

■■ The final issue raised relates to the instructions given. Taking the instructions as a whole, however, we find the instructions fairly and correctly stated the law, and that reversal on this point is not required. (*E.g., Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 807, 344 N.E.2d 583.)

In summary, although the trial was not without error, we believe defendant received a fair trial and that a new trial is not mandated.

Accordingly, the judgment in favor of plaintiff is reversed in part and the cause remanded with directions to reduce the verdict by $273. In all other respects, the judgment is affirmed.

Affirmed in part; reversed in part; and remanded with directions.

PERLIN and HARTMAN, JJ., concur.